815 So.2d 1 (2002)
In re Larry E. BROOME.
No. 2001-B-2260.
Supreme Court of Louisiana.
February 26, 2002.
Rehearing Denied May 24, 2002.
Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, for Applicant.
Larry E. Broome, James A. Gray, II, New Orleans, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary proceeding arises from two counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Larry E. Broome, an *2 attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Around 1993 or 1994, respondent filed a class action lawsuit in the United States District Court for the Eastern District of Louisiana on behalf of approximately 1,000 employees of the Orleans Parish Criminal Sheriffs Office against Charles Foti, in his capacity as Criminal Sheriff of Orleans Parish. This suit, captioned Benjamin Boyd v. Foti, No. CV94-204 (hereinafter referred to as "Foti I"), sought back pay and overtime pay for the employees.
At approximately the same time, an unrelated class action suit instituted by the United Sates Department of Justice was already pending against Sheriff Foti in the United States District Court for the Eastern District of Louisiana. In this suit, captioned United States v. Criminal Sheriff, Parish of Orleans, No. CV90-4930 (hereinafter referred to as "Foti II"), the plaintiffs sought to recover damages for discrimination in the hiring and promoting of female employees of the Orleans Parish Criminal Sheriffs Office. The defendant stipulated to liability, and the Department of Justice ultimately recommended that 370 individuals receive relief.
In August 1996, counsel for the Department of Justice received telephone calls from persons stating that respondent had contacted them, alleging he was a representative of the United States Department of Justice and offering to represent them in Foti II. Counsel for the Department of Justice notified the district court by letter regarding its concerns that respondent was soliciting prospective employment from claimants, who had already been recommended for judicial relief, and was representing that he was connected with the Department of Justice.
At about the same time, respondent had filed an intervention in Foti II on behalf of approximately one hundred alleged clients. The presiding magistrate judge permitted respondent to intervene on a limited basis; however, the judge also ordered that respondent and his clients appear at a hearing so the clients could be questioned by the court regarding respondent's alleged representation.
Respondent appeared at the hearing, but failed to produce any of his clients. The Department of Justice produced several witnesses, who offered strikingly similar testimony. They each asserted that they had never met respondent before, nor solicited his services. Likewise, they each testified respondent appeared at their respective homes alleging he was working for or on behalf of the Department of Justice in connection with Foti II. The witnesses testified respondent asked them to sign retainer agreements in order to effectuate their monetary settlement prior to the then-approaching holiday season. One of the witnesses, Denise Alexander, admitted respondent had represented her in Foti I. However, she maintained she never authorized respondent to list her as a client in Foti II.
Respondent testified at the hearing and admitted he had approached the individuals who testified against him. However, he claimed he did not intentionally violate the prohibition against direct client solicitation because he had taken their names from his Foti I client list.[1] Respondent denied he advised the prospective clients he worked for the federal government. Rather, he asserted he explained to them *3 he was intervening in the matter on the same side as the Department of Justice. He also disputed Ms. Alexander's testimony that she did not authorize him to represent her in Foti II. Respondent testified she, like his other clients listed in the intervention, had signed an affidavit allowing him to represent her in Foti I and he presumed it acted as a retainer and/or general power of attorney in connection with any matter that might involve Sheriff Foti.
Following the hearing, the magistrate judge concluded respondent violated Rules 3.3 (lack of candor toward a tribunal), 7.1 (making false, misleading, or deceptive communications regarding a lawyer's services), and 7.2(a) (unauthorized client solicitation) of the Rules of Professional Conduct. Based on these findings, respondent was disqualified from representing any further clients in the civil action and assessed with all attorney's fees.

Federal Disciplinary Proceeding
Subsequently, a federal disciplinary proceeding was instituted against respondent. Respondent was suspended from engaging in the practice of law for a period of eighteen months in the federal courts. In doing so, the judges of the Eastern District of Louisiana, at an en banc meeting, determined there was clear and convincing evidence respondent violated Rule 3.3(a)(1) when he filed a court pleading misrepresenting he was counsel for Ms. Alexander. In addition to noting respondent's admission in brief that he improperly solicited clients in violation of Rule 7.2(a), the court concluded respondent violated Rule 7.1(a) due to his false and misleading assertions to the persons he was improperly soliciting that he was working for the Department of Justice in connection with the discrimination litigation.

DISCIPLINARY PROCEEDINGS

Formal Charges
Based on the federal disciplinary proceeding, the ODC commenced its own investigation of respondent and, ultimately, filed two counts of formal charges alleging violations of Rules 3.3, 7.1, 7.2, and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct. Respondent filed an answer denying the allegations of misconduct.

Formal Hearing
At the formal hearing, the ODC submitted a transcript of the federal disciplinary hearing with the exhibits, as well as evidence of respondent's prior disciplinary record. Respondent appeared and testified on his own behalf. As in the federal proceedings, respondent denied any intentional misconduct on his part. Regarding his admission in the federal proceedings to engaging in client solicitation, respondent asserted that his statement should be disregarded by the hearing committee because he was suffering the effects of a serious automobile accident at the time he made the statement.

Hearing Committee Recommendation
The hearing committee determined respondent violated Rules 3.3, 7.1, and 7.2 of the Rules of Professional Conduct. Specifically, it concluded respondent improperly solicited all of the individuals who testified against him, except for Ms. Alexander, as well as represented himself to be working with or for the Department of Justice. The committee also found he improperly filed a pleading for Ms. Alexander without her permission. As to respondent's assertions that he was merely attempting to confirm whether the solicited individuals were already his clients, the committee concluded his testimony was outweighed by the testimony of the individuals themselves. *4 Further, it rejected respondent's attempt to retract his earlier admission as being "incredible."
Addressing the issue of sanctions, the committee recognized in aggravation respondent's dishonest or selfish motive, pattern of misconduct, multiple offenses, substantial experience in the practice of law (admitted 1986), and prior disciplinary record.[2] As a mitigating factor, the committee recognized the discipline already handed down by the federal court for the same misconduct.
Considering these factors, the committee recommended respondent be suspended from the practice of law until such time as he attends Ethics School sponsored by the Louisiana State Bar Association, with the condition the suspension be no less than four months.

Disciplinary Board Recommendation
The disciplinary board adopted the factual findings of the hearing committee. However, the board concluded the committee erred in failing to find respondent's conduct also constituted a violation of Rule 8.4(c) of the Rules of Professional Conduct. In support, it stated respondent misrepresented to various individuals he was working with or for the Department of Justice, and filed an intervention on behalf of Ms. Alexander without her permission. The board found respondent's conduct was intentional and knowing, and caused actual injury to the legal system and the profession in that his actions have eroded the trust and confidence of the public.
In addressing the issue of sanctions, the board accepted the aggravating and mitigating factors cited by the committee. Citing the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board concluded the appropriate sanction for respondent's misconduct was a suspension from the practice of law for a period of one year and one day.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board's recommendation. However, pursuant to Supreme Court Rule XIX, § 11(G)(1)(a), the court, on its own motion, docketed the matter for briefing and argument.

DISCUSSION
Although the federal court has already adjudged respondent guilty of solicitation, we, as the court of original jurisdiction in bar disciplinary matters, are compelled to make an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343.
The testimony of the witnesses produced by the Department of Justice demonstrates that respondent improperly solicited their representation in Foti II. Although respondent asserts that he reasonably believed these clients were the *5 same clients he represented in Foti I, he admits he is unable to produce any records to substantiate his position. Moreover, respondent conceded in his federal court memorandum that his actions violated the rules on solicitation, stating, "due to an over zealous effort to ascertain the identity of what he perceived to be possible clients and his ignorance as to Rule 7.2(a), regarding Direct Contact with Prospective Clients; he did indeed violate the aforementioned rule."[3]
We also find the record supports the charge that respondent intentionally made statements to the prospective clients designed to mislead them to believe he was working for or associated with the Department of Justice. The testimony of all the witnesses consistently indicates that respondent advised them he was working for or on behalf of the Department of Justice.[4] Respondent asserts that he in fact informed the clients that he was intervening on the same side as the Department of Justice. However, even accepting respondent's explanation, such statements could certainly lead a person unsophisticated in the law to assume respondent was working in association with the Department of Justice. Respondent could have easily disclaimed any association with the Department of Justice. His failure to do so suggests he intended for the client to believe he was in some way working with the Department of Justice.
Accordingly, we find the record supports the conclusion that respondent's actions violated Rules 7.1 and 7.2 of the Rules of Professional Conduct. The sole remaining issue presented for our consideration is the appropriate sanction for this misconduct.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Our jurisprudence has consistently found solicitation to be a very serious professional violation. In re: D'Amico, 94-3005 (La.2/28/96), 688 So.2d 730 ("direct solicitation of professional employment from a prospective client in violation of Rule 7.3 is a very serious disciplinary violation that undermines the reputation of lawyers generally and the public's attitude toward the profession"); Louisiana State Bar Ass'n v. St. Romain, 560 So.2d 820 (La.1990) ("[s]olicitation is abhorrent to the legal profession and places lawyers in disrepute with the public"). Rules against solicitation are prophylactic measures which are intended to prevent harm before it occurs. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).
*6 In determining the appropriate baseline sanction for this misconduct, we find it is helpful to look to Standard 7 of the ABA's Standards for Imposing Lawyer Sanctions (1991). That Standard, entitled "Violations of Duties Owed to the Profession," provides in pertinent part:
Absent aggravating or mitigating circumstances,... the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, ... [or] improper solicitation of professional employment from a prospective client....
7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.
7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.
7.4 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed to the profession, and causes little or no actual or potential injury to a client, the public, or the legal system.
In applying these factors, we find respondent's actions were knowing and intentional. Therefore, the lesser sanctions such as reprimand or admonition, which are imposed in cases of negligent conduct, are clearly inappropriate here. On the other hand, respondent's actions caused no serious harm to a client, the public, or the profession, indicating that the harshest sanction of disbarment is not warranted. Rather, we conclude that respondent's knowing solicitation of clients who were already being represented by the Department of Justice exposed these persons to potential harm, as their recovery in Foti II could have been delayed or reduced by respondent's actions. Respondent's actions further caused injury and potential injury to the legal profession as a whole by reducing the public's confidence in attorneys. Accordingly, we conclude the baseline sanction for respondent's misconduct is a suspension.
As aggravating factors, we find respondent had a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, has substantial experience in the practice of law, and has a significant prior disciplinary record, including a ninety-day suspension from the practice of law imposed by this court for failing to properly supervise his office staff. The sole mitigating factor present is the imposition of a sanction by the federal court for the same conduct at issue here.
Considering these factors, we conclude the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of one year and one day. Such a suspension, which will necessitate an application for readmission, will hopefully impress upon respondent the seriousness of his actions, and deter him from engaging in similar misconduct in the future.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the *7 record, briefs, and oral argument, it is ordered that Larry E. Broome be suspended from the practice of law in Louisiana for a period of one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court's judgment until paid.
NOTES
[1] However, respondent admitted he was unable to recall where he had obtained the written list. The record indicates the list respondent utilized may have in fact been the Department of Justice's roster of potential claimants in Foti II.
[2] On March 26, 1993, respondent was suspended from the practice of law for ninety days stemming from his gross failure to supervise his office staff, which led to his firm's obtaining a personal injury settlement for a client based on the false representation to an adjuster and opposing counsel that a timely suit had been filed. In re: Broome, 615 So.2d 1333 (La.1993). On January 25, 1995, respondent was admonished for violating Rules 1.5(a) (failure to keep client and third-party funds separate from the lawyer's own property) and 1.15(d) (failure to maintain an interest-bearing client trust account) of the Rules of Professional Conduct. See 94-ADB-125. On July 31, 1995, respondent was admonished for violating Rules 5.3 (failure to properly supervise non-lawyer assistants) and 5.5 (engaging in the unauthorized practice of law) of the Rules of Professional Conduct. See 95-ADB-052.
[3] We recognize that respondent now attempts to retract this admission, on the ground that he was suffering from the effects of a car accident at the time he made it. However, we find no credible evidence in the record to support such a conclusion.
[4] This testimony is further corroborated by the fact that several individuals contacted the Department of Justice, presumably to verify respondent's employment with the Department. It was this contact which prompted the Department of Justice to notify the district court of respondent's actions.