*531 ATTORNEY DISCIPLINARY PROCEEDINGS.
[ .PER CURIAM.
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Gary W. Bailey, an attorney licensed to practice law in Louisiana.
FORMAL CHARGES
Count I — The Matthews Matter
Respondent represented the plaintiff in the matter entitled Nakita Matthews v. Timothy Creswell, et al., No. 458,130 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge. In the course of the litigation, the defendants filed an exception of prescription which was set for hearing on Monday, July 26, 1999. On July 20, 1999, respondent filed a motion to continue the hearing, representing that he could not be present because he was “scheduled for trial” in a Texas personal injury case beginning on July 22, 1999. Respondent further represented that the “trial on the merits” in Kenneth J. Bailey v. Rebecca Lander, No. 98-2333 on the docket of the 168th Judicial *532 District Court for El Paso County, Texas,[1] was anticipated to last three to five days.
The judge presiding in the Matthews case, Judge Timothy E. Kelley, subsequently learned that the Bailey trial had been completed in May 1999, two | ¡¡months prior to the prescription hearing in Matthews, and that the only matter remaining on that docket was a motion for new trial which was to be heard on Thursday, July 22, 1999, four days prior to the prescription hearing. Based upon this information, Judge Kelley denied respondent’s motion for a continuance.
On July 26, 1999, respondent did not appear at the hearing in the Matthews case, nor did he file any pleading on his client’s behalf.[2] Following a hearing on August 2, 1999, Judge Kelley sanctioned respondent for misrepresenting facts to the court. On August 20, 1999, Judge Kelley filed a complaint against respondent with the ODC.
The ODC alleges that respondent’s conduct violates the following provisions of the Louisiana Rules of Professional Conduct: 3.3(a)(1) (making a false statement of material fact or law to a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II — The Wagner Matter
Respondent represented the plaintiff in the matter entitled Bette Rose Wagner v. Rose and Randy Daquanno, No. 9907-06989-D on the docket of the Baton Rouge City Court. Plaintiffs petition alleged that she had been the victim of a battery committed at her home by her neighbors, the defendants. At the trial of the matter on August 8, 2000, respondent attempted to introduce into the record a medical narrative report authored by Dr. Nicholas J. Campo. However, the report was altered on its face. Specifically, although the original narrative report referred to the plaintiff sjjjhistory of being “accosted at work,” the words “at work” had been deleted from the copy of respondent’s exhibit that he attempted to introduce at trial.
On August 11, 2000, defense counsel filed a complaint against respondent with the ODC.
The ODC alleges that respondent’s conduct violates the following provisions of the Louisiana Rules of Professional Conduct: 3.3(a)(4) (offering evidence the lawyer knows to be false), 3.4(a) (unlawfully altering a document having potential evidentia-ry value), 3.4(b) (falsifying evidence), 8.4(a), 8.4(c), and 8.4(d).
DISCIPLINARY PROCEEDINGS
Following an investigation of the complaints, the ODC filed two counts of formal charges against respondent on January 2, 2002. Respondent answered the formal charges and denied any misconduct.

Review of the Record

Six exhibits were introduced at the formal hearing in connection with Count I, including (1) the complaint filed against respondent by Judge Kelley, with its attachments, (2) respondent’s reply to the complaint, with its attachments, (3) the suit record in the Matthews case, (4) the Texas court’s records in the Bailey case, including correspondence to Judge Kelley from the Texas trial judge, Guadalupe Rivera, and (5) the post-trial motions filed by *533 respondent in the Bailey case. The ODC called Judge Kelley and his assistant, Paula Dennis, to testify in person before the committee; respondent testified on his own behalf.
Respondent testified that when he was notified of the hearing date on the exception of prescription filed by the defendants in the Matthews case, he was in El |4Paso, Texas, preparing for some post-trial motions in his brother’s personal injury case. Respondent called his office in Baton Rouge and asked his assistant to find a prior motion for continuance and send him a rough draft in Texas to review. Respondent received the draft and made corrections to it before sending it back to Baton Rouge to be filed on July 20, 1999. The motion to continue states in pertinent part as follows:
Counsel for plaintiff has been scheduled for trial in another matter entitled Kenneth Bailey v. Rebecca Lander, Cause Number 98-23833 pending in the 168th Judicial District Court in El Paso, El Paso County, Texas, beginning on Jult [sic] 22, 1999; and continuing thereafter until trial is complete. It is anticipated that a trial on the merits will require from three (3) to five (5) days. This appearance will preclude counsel’s appearance at the hearing scheduled for July 26, 1999. [emphasis added]
Thereafter, Judge Kelley received information from defense counsel that the grounds necessitating the continuance, i.e., that respondent was scheduled to go to trial in Texas on another matter at the same time, were false. Accordingly, Judge Kelley directed his assistant, Paula Dennis, to call the trial court in Texas to verify the information provided by respondent. When Ms. Dennis did so on July 20, 1999, she was informed that the Bailey case had been tried on May 19,1999 and that a jury verdict had been rendered for the defendant on the same day. Ms. Dennis was further informed that the “trial” set on July 22, 1999 was a 4:00 p.m. hearing on respondent’s post-trial motions, and that respondent did not have any matters pending before the Texas court during the week of July 26,1999. Ms. Dennis relayed this information to Judge Kelley, who then denied respondent’s motion for a continuance of the prescription hearing in Matthews.
UOn the afternoon of Friday, July 23, 1999, unaware of Judge Kelley’s ruling on the motion for a continuance, respondent called Ms. Dennis to inquire whether the motion had been granted. Ms. Dennis told respondent that the continuance had not been granted, and that the exception of prescription was still set for the following Monday. Respondent replied that he was still in Texas and asked what he was supposed to do. Ms. Dennis inquired whether “it was on the same case that he had referred to in his motion to continue and he said, yes. And he said he would probably be there until Wednesday of the next week, what was he supposed to do.” Judge Kelley was not available to take respondent’s call at the time, so Ms. Dennis asked respondent to call back at 5:00 p.m. In the meantime, Ms. Dennis called the Texas court again:
I did call Rebecca Gonzales, who was Judge Rivera’s secretary, just to find out if the motion had been heard the day before and if it had turned into a trial. And she said that it had not gone into a trial, that it had only lasted about 30 minutes. And she had received a note from the Judge that day to prepare an order [denying the post-trial motions] and send to the attorneys. And I asked her if this was the case that was on the docket, was it on the docket at all the next week. And she said, no, that he *534 should not be in the court in the hext week.
When respondent called Ms. Dennis at 5:00 p.m., she informed him that Judge Kelley had the prescription hearing on his docket for Monday and that he was expected to be present. Respondent said that he “would not be back by then” and that he “would have to see about getting someone to cover for him.”
Nevertheless, respondent did not appear at the prescription hearing on Monday, July 26, nor did anyone appear on behalf of the plaintiff. Following the hearing, Judge Kelley signed an order on his own motion directing respondent to show cause on August 2, 1999 why he should not be sanctioned under La.Code Civ. P. art. 868. At 1 (¿he hearing, respondent explained that he had not intentionally made a misrepresentation of fact to the court in his motion for a continuance. Respondent essentially testified that he meant to say that a hearing on his pending post-trial motions in the Texas case was scheduled on July 22,1999, and that he was hopeful the new trial motion would be granted and that he might obtain a three-to five-day trial the following week (the week during which the hearing on the exception was scheduled before Judge Kelley), because Judge Rivera’s bailiff had said her docket was fairly clear that week. He further noted that if his new trial motion was not granted, he felt at least that his JNOV motion would be granted and, if so, he would expect to be arguing the damages part of his case in Texas during the week of July 26. In any event, respondent said that even if he lost the post-trial motions, he planned to stay in Texas to work on an appeal of the case. Not satisfied with this explanation, which he described as “implausible” and “not credible,”[3] Judge Kelley sanctioned respondent under La.Code Civ. P. art. 863.
Six exhibits were introduced in connection with Count II, including (1) the complaint filed against respondent by defense counsel in the Wagner case, with its attachments, (2) respondent’s reply to the complaint, with its attachments, (3) the suit record in the Wagner case, including the transcript of trial, and (4) correspondence from the office of Dr. Nicholas Cam-po. The ODC called Robert J. Burns, Jr., counsel for the defendants in the Wagner case, and Pat Munson, records custodian for Louisiana Internal Medicine Associates, the medical group of which Dr. Cam-po is a member, to testify in person before the committee; respondent testified on his own behalf.
17Robert Burns was retained by Allstate Insurance Company to represent its insureds in connection with the civil suit filed by respondent on behalf of Ms. Wagner. The basis of the claim was that Ms. Wagner had been assaulted in her home by the defendants. Shortly before the start of the trial on August 8, 2000, respondent handed some exhibits to Mr. Burns. One of the exhibits was a typewritten report from Dr. Campo dated July 25, 2000, the first paragraph of which states:
Upon reviewing my chart of 07/17/98, I saw Ms. Bette Wagner in the office on that day. The patient came in having alleged that she was accosted. She suffered some trauma to her rib cage and right shoulder, per history. She denied any chest pain or shortness of breath, [emphasis added]
However, Mr. Burns noticed that the second sentence of the report contained a *535 suspicious gap after the word “accosted,” and the period after that word appeared to have been inserted in ink. When respondent tried to introduce the report into evidence, Mr. Burns objected to the exhibit on the basis of its lack of authenticity. At the suggestion of respondent, the presiding judge agreed to hold the record open until a full copy of Dr. Campo’s records could be filed. When the narrative report was faxed directly to the judge from Dr. Campo’s office, the second sentence read: “The patient came in having alleged that she was accosted at work.”
Respondent testified at the hearing that he did not review Ms. Wagner’s file until the night before trial. He admitted specifically reviewing Dr. Campo’s report and noticing a blank space at the end of the second sentence of the report. Respondent claimed that he did not think that this blank space at the end of that sentence was highly irregular because “sometimes doctors aren’t really professional about correcting their reports.” He also claimed that what’ he reviewed was a copy, and that he never |ssaw an original of the report. It was that copy that respondent attempted to file into evidence as an exhibit at the trial of the matter.
In addition to claiming ignorance as to the report’s alteration, respondent defended his actions by contending that the claim was worth a very small amount of money; that he was handling the matter pro bono for Ms. Wagner; and that he had taken the initiative in suggesting to the court that the full records of Dr. Campo be admitted into the record. However, respondent ultimately suggested that Ms. Wagner, whom he claimed to have employed briefly as a file clerk at his office,[4] had herself altered the file copy of Dr. Campo’s report without his knowledge.

Hearing Committee Recommendation

After considering the evidence presented at the hearing, the hearing committee found that respondent intentionally misrepresented to Judge Kelley a professional conflict in a Texas proceeding in connection with his seeking a continuance of the hearing on the exception of prescription pending before Judge Kelley:
To argue as respondent did the semantics of the meaning of the word “trial” in the body of that motion (e.g., that he actually meant a hearing on his post-trial motions) is unpersuasive and strains credulity considering the context of these representations.... This Committee ... is well aware of the difference between a trial and a hearing and is convinced that respondent was equally aware of that distinction. To compound the straining of his credibility by asserting as respondent did that he was hopeful that the Texas judge would grant his motion [for new trial] and schedule the matter for a new three to five day trial on the very next week is in stark contradiction to the realities of the practice of law, including subpoena delays, witness preparation and crowded dockets. The presiding judge in the Texas matter placed all doubt to rest with her letter and attached docket entries sent to Judge Kelley in connection with the sub- ' sequent contempt hearing against respondent, | ¿verifying that at no time was anything placed on the docket for the following week of July 26 involving this respondent’s matters, [emphasis in original]
In conclusion, the committee noted that it was “greatly influenced by the clear and concise testimony of Judge Kelley, who found, as does the Committee, that respon *536 dent was done with Judge Rivera on Thursday afternoon and would be available in Baton Rouge during the week of July 26,1999.”
In connection with Count II, the committee found respondent either altered or was aware of the altering of Dr. Campo’s report at the time he attempted to file it into evidence in the Wagner case. The committee noted that the original report was never found or produced by respondent; rather, the only version of the report produced by respondent
was a copy with the alteration that deleted the work reference. This Committee does not accept respondent’s explanation that the report in that condition was simply consistent with sloppy work done by doctors, and feels that at the very least the report in that condition should have prompted an inquiry by respondent to Dr. Campo’s office as to the obvious irregularity of that sentence. The fact that respondent attempted to file a copy into evidence rather than the original mailed by Ms. Munson is further evidence to this Committee that respondent was or should have been aware of its altered state and concluded that a copy would be less obvious in its altered state than the original would be.
The committee squarely rejected respondent’s assertion that Ms. Wagner had altered the report without his knowledge.
Based upon these factual findings, the committee determined that respondent violated the Rules of Professional Conduct as charged in the formal charges. Relying on the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence, the committee determined the baseline sanction for respondent’s misconduct is a | ^suspension. As aggravating factors, the committee recognized, among other things, multiple offenses and respondent’s refusal to acknowledge the wrongful nature of the conduct.[5] In mitigation, the committee recognized that respondent has no prior disciplinary record.
Based on this reasoning, and noting that it was “particularly influenced” by “the multiplicity of sanctionable conduct committed by respondent and by his total refusal to acknowledge the wrongful nature of his conduct,” the committee recommended that respondent be suspended from the practice of law for two years.
Respondent filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board generally adopted the hearing committee’s findings of fact and conclusions of law, and agreed that respondent should be suspended from the practice of law for two years. The board also recom *537 mended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
^DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We agree that the factual findings of the hearing committee are well supported by the evidence. We also agree that these factual findings support the conclusion that respondent has violated the Louisiana Rules of Professional Conduct.
Having found professional violations, we now turn to a determination of the appropriate sanction for this misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Each instance of respondent’s misconduct is serious in nature. In 1999, respondent filed a motion for continuance in which he knowingly misrepresented to the trial court that he had a scheduling conflict (i.e., a trial that would last three to five days), when he had no reason to believe his statements were in any way truthful or Inaccurate. In 2000, respondent filed a medical report into evidence at trial when he clearly knew that the report had been altered. It is particularly disturbing to us that the alteration pertained to an issue that was central to respondent’s case (i.e., whether his client’s alleged injury occurred at home, as she claimed, or at work). After reviewing the record, we agree with the hearing committee and the disciplinary board that such serious misconduct justifies a lengthy suspension from the practice of law. Accordingly, we will accept the disciplinary board’s recommendation and suspend respondent from the practice of law for two years.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that Gary W. Bailey, Louisiana Bar Roll number 21996, be suspended from the practice of law in Louisiana for a period of two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the *538 date of finality of this court’s judgment until paid.

. Respondent is not licensed to practice law in Texas; rather, he appeared pro hac vice on behalf of the plaintiff, who is his brother.

. The hearing on the exception of prescription was held in respondent’s absence, following which Judge Kelley denied the exception.

. Before the hearing committee, Judge Kelley testified it was his impression that respondent sought the continuance because he “was off in Texas with family or whatever it was and just didn’t want to bother to come back and he was going to make sure that he didn't have to be here.”

. It should be noted that respondent presented no records of Ms. Wagner's employment at his office, claiming that she had been paid on a cash basis.

. Noting that respondent graduated from law school in 1977, the committee also assigned substantial experience in the practice of law as an aggravating factor. However, the disciplinary board determined that factor is not applicable here because respondent was not admitted to the practice of law in Louisiana until 1993. Furthermore, the committee assigned indifference to making restitution as an aggravating factor, based upon its conclusion that respondent did not comply with the art. 863 sanctions ordered by Judge Kelley. However, respondent testified without contradiction that he did, in fact, comply with the sanctions imposed upon him. Finally, the committee concluded that respondent's behavior demonstrated a pattern of misconduct, because he admitted violating the law in paying an office employee, Ms. Wagner, in cash. The board noted that only the two instances of proven misconduct should be considered in determining whether a "pattern of misconduct” is present, and that two instances of misconduct does not generally qualify as a pattern. The ODC did not file an objection in this court to the board's findings in these respects.