| ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joseph M. Bruno, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
The underlying facts of this matter are not in dispute, having been stipulated to by the parties. In 1989, respondent was appointed one of eight members of the Plaintiffs’ Legal Committee (PLC) in the federal class action litigation arising out of an explosion at the Shell Oil Company refinery in Norco. During the contentious liti *578 gation, respondent was introduced to Jack Zewe, a longtime Shell employee, by a mutual friend. Mr. Zewe informed respondent that Shell’s attorneys were destroying relevant documents and “teaching witnesses to lie,” and he expressed a willingness to cooperate with the PLC against Shell. However, Mr. Zewe made it clear from the outset that he expected to be paid in return for his cooperation.[1]
In March 1991, respondent arranged several meetings between Mr. Zewe and John Cummings, III and Wendell Gauthier, two PLC members whom respondent viewed as “the leaders of the group.” Shortly thereafter, respondent paid Mr. Zewe $5,000, "with the agreement that Mr. Zewe would keep track of his time and expenses, | Pand at the end of the Shell/Norco litigation, he would apply to the court for payment as an expert witness. Respondent assured Mr. Zewe that the PLC would support the application for payment.
Eventually, Shell learned that one of its employees was providing information to the PLC, and it filed a motion to disqualify the members of the PLC as counsel of record for the plaintiffs. In October 1992, United States District Judge Henry Mentz heard oral argument on the motion to disqualify. During the hearing in open court, Mr. Cummings, arguing on behalf of the PLC, affirmatively stated that the PLC had made no payments to Mr. Zewe.[2] Respondent was present at oral argument, but he said nothing when Mr. Cummings made this misrepresentation to the court. Likewise, respondent did not reveal the true facts when attorney Russ Herman filed a brief with the court asserting that the PLC had not paid Mr. Zewe. Rather, it was not until January 1993 — some 2½ months after the hearing on the motion to disqualify — that respondent disclosed to Judge Mentz that he had paid Mr. Zewe money up front and that he had promised Mr. Zewe that the PLC would seek additional monies for him at the conclusion of the Shell/Norco litigation.
In July 1994, after the Shell/Norco litigation was settled, the en banc district court appointed the United States Attorney’s Office to investigate and report on respondent’s conduct. After the case languished for several years, the United States Attorney’s Office submitted a lengthy investigative report to the federal court in February 1997. Respondent filed a written response to the investigative report. Thereafter, the federal court ordered respondent to show cause why he should not be suspended from the practice of law in federal court.
| sUnited States District Judge Stanwood Duval conducted the show cause hearing on November 19, 1998. On February 8, 1999, Judge Duval issued his report and recommendation in which he concluded that respondent was guilty by clear and convincing evidence of “paying a witness and failing to be candid with the tribunal,” in violation of Rules 3.4(b) and 3.3(a)(1), respectively, of the Rules of Professional Conduct. Judge Duval recommended a six-month suspension for respondent; however, the en banc court ultimately suspended respondent from practicing law in the federal courts of the Eastern District *579 of Louisiana for a period of one year. Respondent appealed his suspension to the United States Fifth Circuit Court of Appeals, which affirmed. Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d 252 (5th Cir.2000). Respondent was reinstated to practice in federal court in April 2000.
DISCIPLINARY PROCEEDINGS
The formal charges filed by the ODC against respondent allege that he “paid a fact witness for inside information” in violation of Rule 3.4(b) of the Rules of Professional Conduct (a lawyer shall not offer an inducement to a witness that is prohibited by law) and “failed to promptly correct the false statements” of his co-counsel in violation of Rule 3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal). Respondent admitted his misconduct in his answer to the formal charges, and the matter proceeded to a hearing in mitigation.

Heating Committee Recommendation

In its report, the hearing committee adopted the stipulated facts and acknowledged respondent’s admission that he violated Rules 3.4(b) and 3.3(a)(1) of |4the Rules of Professional Conduct. According to the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction for respondent’s misconduct is suspension. The committee cited ABA Standard 6.32, which provides that suspension is generally appropriate when a lawyer knowingly engages in an improper communication with an individual in the legal system, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding. Respondent knew or should have known that the payment to Mr. Zewe was improper, and furthermore, the payment was a potential cause of interference with the outcome of the proceeding. ABA Standard 6.12 provides that suspension is generally appropriate “when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.” Here, respondent has admitted that he knew false statements were made to the federal court and that he did not take immediate remedial action to correct the false statements. Respondent should have reported the false statements to the court sooner than he did, and his failure to do so caused a potentially adverse effect on the legal proceeding.
The committee noted that this court has in the past suspended lawyers for up to two years for misconduct, similar to respondent’s. In In re: Bailey, 03-0839 (La.6/6/03), 848 So.2d 530, the attorney was suspended for two years for altering a medical record that was introduced into evidence and for lying about a scheduling conflict. In In re: Broome, 01-2260 (La.2/26/02), 815 So.2d 1, the attorney was suspended for one year and one day for making misleading statements to the federal court and for solicitation of clients. Considering this jurisprudence and the ABA | ^Standards, the committee determined that respondent should be suspended from the practice of law for one year.
The only aggravating factor recognized by the committee is respondent’s substantial experience in the practice of law (admitted 1978). In mitigation, the committee recognized the following: absence of a prior disciplinary record, absence of a dishonest or selfish motive,[3] cooperative atti *580 tude toward the disciplinary proceeding, character and reputation, delay in the disciplinary proceeding, imposition of other penalties or sanctions, and remorse.
Recognizing that the purposes of lawyer discipline require that respondent receive a “meaningful penalty for his conduct,” but considering the mitigating circumstances present in this case, the committee determined it is appropriate to defer all but three months of the recommended one-year suspension.
Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for one year, with all but three months deferred.
Respondent filed an objection to the hearing committee’s report and recommendation, asserting that the sanction recommended by the committee is excessive.

Disciplinary Board Recommendation

The disciplinary board accepted the hearing committee’s factual findings and agreed that the committee properly applied the Rules of Professional Conduct. The board found respondent’s conduct was intentional, and that he violated a duty owed to the legal system. Respondent admitted that he allowed false statements to go uncorrected before the federal court for 2⅛ months and admitted that he engaged in | ^conduct that was tantamount to a prohibited inducement of a witness. Respondent and Mr. Zewe initially met in December 1990 and discussed Mr. Zewe’s assistance with the Shell/Norco case in exchange for remuneration. On March 28, 1991, respondent paid Mr. Zewe $5,000. The board found the three-month period between Mr. Zewe’s initial request for money and respondent’s payment supports a finding of intentional conduct.
The board determined that the potential harm to the plaintiff class was great. Had the Shell/Norco case not reached a satisfactory settlement, some of the plaintiffs’ evidence may have been compromised due to the manner in which it was obtained. Similarly, there may have been no actual harm to the defendants in the case; however, the question remains as to the potential harm to the defendants’ case and strategy as Mr. Zewe met with Shell’s lawyers on several occasions with regard to the Norco litigation. Finally, respondent caused actual harm to the legal system and to the profession. Paying a witness and failing to correct factual misstatements on the record undermine the credibility of the judicial process and the integrity of the profession as a whole.
Turning to the issue of an appropriate sanction, the board determined that the baseline sanction for respondent’s misconduct is disbarment. ABA Standard 6.11 provides that disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding. Respondent was present at oral argument when his co-counsel, Mr. Cummings, addressed the federal court on behalf of the PLC and stated that the PLC had not made any payments to Mr. Zewe. Nevertheless, respondent said nothing. |7Respondent admitted that he failed to take corrective action for 2½ months after Mr. Cummings made statements that respondent knew to be false. As a result, respondent allowed the initial false statement to lead to another misrepresentation in a subsequent brief by Mr. Herman, who was defending the PLC on the motion to disqualify due to the alleged payment to Mr. Zewe.
ABA Standard 6.21 permits disbarment when a lawyer knowingly violates a court *581 order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding. Respondent knowingly paid Mr. Zewe for information related to the Norco litigation. The class action settled for $160 million the night before Mr. Zewe was to testify at a motion hearing to prohibit the use of certain evidence. Respondent’s firm received a fee for his work in the case. The record supports the conclusion that respondent knew the payment to Mr. Zewe was wrong. He admitted in testimony that it was inappropriate to make the payment and that what he did “jeopardized potentially the entire litigation.”
The board found the record supports the following mitigating factors: absence of a prior disciplinary record, cooperative attitude toward the disciplinary proceeding, character or reputation, imposition of other penalties or sanctions, and remorse. The board recognized the following aggravating factors: dishonest or selfish motive, multiple offenses (payment to Mr. Zewe and permitting misstatements to be made to the court), and substantial experience in the practice of law.
In prior cases involving similar misconduct, this court has imposed sanctions ranging from a one year and one day suspension to permanent disbarment. The board looked to the Broome and Bailey eases cited by the hearing committee, and also considered the following: In re: Stephens, 94-1924 (La.11/18/94), 645 So.2d 1133 |s(the attorney was suspended for eighteen months for violations of Rules 3.3(a), 3.4(b), 8.4(c), and 8.4(d) by notarizing a false affidavit); In re: Watkins, 95-0459 (La.6/16/95), 656 So.2d 984 (the attorney was suspended for two years after his federal conviction for making false statements to the Social Security Administration to receive benefits for a client and for collecting an excessive fee in a social security case; significant mitigating factors were present); In re: Ellis, 98-0078 (La.5/1/98), 710 So.2d 794 (the attorney was suspended for three years for violations of Rules 3.4(b), 8.4(c), and 8.4(d) by falsifying a court judgment and order; significant mitigating factors were present, warranting a downward deviation from disbarment); and In re: Harris, 03-0212 (La.5/9/03), 847 So.2d 1185 (the attorney was permanently disbarred for manufacturing evidence to support his claim that his deceased sister took his clients’ money; numerous aggravating factors were present, including a prior disciplinary history).
Under all the circumstances, the board concluded that the gravity of respondent’s actions warrants disbarment, and that the mitigating factors present are insufficient to justify any lesser sanction. Based upon this reasoning, the board recommended that respondent be disbarred and be assessed with all costs of these proceedings.
Three board members dissented, reasoning that disbarment is excessive because it is more severe than the one-year suspension imposed by the federal court where respondent’s infraction actually occurred. The dissenting members also noted the absence of any record evidence that respondent’s conduct caused actual injury to the parties in the Shell/Norco litigation, and commented that the recommended sanction fails to take into account several mitigating factors. The dissenting board 19members concluded that the period of suspension suggested by the committee is a “meaningful and appropriate penalty.”
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
*582 DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on the stipulations and other evidence in the record, we find respondent made a prohibited monetary payment to a witness and failed to correct statements made by his co-counsel to the federal district court which he knew to be false. As respondent has admitted, there is clear and convincing evidence which establishes that he has violated Rules 3.3(a)(1) and 3.4(b) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and|indeter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s payment to a witness and lack of candor towards a federal judge violated the integrity of the judicial system and undermined the proper administration of justice, causing a potentially adverse effect on the legal proceeding. The hearing committee correctly found that the baseline sanction for this knowing misconduct is a period of suspension.[4]
In fashioning an appropriate sanction in this case, we recognize in mitigation that respondent has no prior disciplinary record in nearly thirty years of practice, has a good reputation in the legal community, suffered the imposition of other penalties and sanctions for his conduct, and has expressed genuine remorse.
Considering the totality of the circumstances, and taking into account all of the interests to be served by the lawyer disciplinary process, we conclude that the appropriate sanction for respondent’s misconduct is a three-year suspension from the practice of law. We will defer eighteen months of the suspension in view of the significant mitigating factors present.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is [¿¡ordered that Joseph M. Bruno, Louisi *583 ana Bar Roll number 3604, be and he hereby is suspended from the practice of law for three years, with eighteen months deferred. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
VICTORY, Justice, dissents and assigns brief reasons.

. Mr. Zewe was apparently concerned about the possibility he could be "caught” by Shell, which would likely result in his being fired.

. Mr. Cummings told the court that "there is an indication that the PLC has made payments or is making payments to this party [Zewe], All of which I know is untrue, ...” Several minutes later, Mr. Cummings again misrepresented that Mr. Zewe was not being paid by the PLC: "... [N]o member of the PLC ever promised money, [Zewe] was told just the opposite, he could not be paid....”

. The committee found that respondent’s motive in paying Mr. Zewe was to ensure that justice would be served.

. A violation of Rule 3.4(b) is a particularly serious infraction which under some circumstances may warrant disbarment. See, e.g., In re: Hingle, 98-0774 (La.9/18/98), 717 So.2d 636 (attorney disbarred based on his criminal conviction of public bribery stemming from his payment of a witness' debts in exchange for the witness’ agreement not to testify against the lawyer’s clients).