ATTORNEY DISCIPLINARY PROCEEDING PER CURIAM 11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Joseph M. Bruno, an attorney licensed to practice law in Louisiana. PRIOR DISCIPLINARY HISTORY Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1978. In 1989, respondent was appointed to the Plaintiffs’ Legal Committee in federal class action litigation arising out of an explosion at the Shell Oil Company refinery in Norco. During the litigation, respondent made a prohibited monetary payment to a witness, and later, he failed to correct his co-counsel who told a federal judge that the payment had not been made. In 1999, following disciplinary proceedings in the United States District Court for the Eastern District of Louisiana, respondent was suspended from practicing law in that court for a period of one year. Respondent was reinstated to practice in federal court in 2000. Thereafter, the ODC filed formal charges against respondent arising out of his misconduct in the Shell/Norco litigation. In In re: Bruno, 06-2791 (La. 5/11/07), 956 So.2d 577 (“Bruno I”), this court . suspended respondent from the practice of law for three years, with eighteen months deferred. Respondent was reinstated to laPractice in Louisiana on November 20, 2009. In re: Bruno, 09-2227 (La. 11/20/09), 21 So.3d 933. Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding. UNDERLYING FACTS Clarence Phoenix and his wife owned a home in Baton Rouge that they maintained as rental property.. The home sustained wind and water damage when Hurricane Gustav made landfall in Louisiana on September 1, 2008. Mr. Phoenix, an experienced . property owner who was retired from an insurance company, attempted to negotiate directly with his insurer, Repub-lie Fire and Casualty Insurance Company (“Republic”), to resolve his claim. Mr. Phoenix successfully obtained payments from Republic in the amount of $4,099.17 and $269.28, but despite his best efforts, he was unable to secure what he believed to be a reasonable additional payment for the loss he had sustained. After battling with Republic for nearly a year without success, Mr. Phoenix decided to retain the services of respondent, who had previously assisted him with a claim for property damages following Hurricane Katrina. On August 11, 2009, Mr. Phoenix signed a contingency fee agreement with the law firm of Bruno and Bruno, LLC (“the firm”). Unbeknownst to Mr. Phoenix, respondent was suspended from the practice of law at this time as a result of this court’s order in Bruma I. In connection with the representation of clients with hurricane property damage claims, including Mr. Phoenix, the firm engaged Full Scope Services, LLC (“Full Scope”), a claims management and adjustment services company, to inspect the property in question and document the damages. Following the inspection of Mr. Phoenix’s property, Full Scope generated a report titled “Proof of Claim” which |sestimated losses to the dwelling totaling $34,574.61. Mr. Phoenix was not provided a copy of the Full Scope report. On August 20, 2009, respondent’s son, Joseph Bruno, Jr., forwarded the Full Scope report to Republic. He demanded an additional $20,000 to compensate Mr. Phoenix for loss of use of the dwelling and damage to the contents, for a total claim of $54,574.61. Mr. Phoenix was not provided a copy of the settlement demand. On September 30, 2009, Republic’s adjuster, Amy Hill, advised Mr. Bruno, Jr. that Republic had rejected the proof of loss as incom-píete. She also requested the submission of photos, receipts, and other items to substantiate the additional damages claimed. Upon receipt of Ms. Hill’s correspondence, Mr. Bruno, Jr. put it into the Phoenix file, set the file aside, and did nothing further.[1] By November 2009, respondent had been reinstated to the practice of law, and on January 1, 2010, he assumed full responsibility for Mr. Phoenix’s file. On February 3, 2010, Ms. Hill spoke by telephone with Phillip Lee, a co-owner of Full Scope, about Mr. Phoenix’s claim, and they arrived at a tentative settlement that would cover property damages. However, Ms. Hill understood that a lawyer would have to speak to Mr. Phoenix about the offer, and Mr. Phoenix would necessarily have to agree to the terms. The amounts tentatively agreed upon were a $5,219.55 supplement for dwelling damages; a $1,000 supplement for contents; and a $1,000 supplement for additional living expenses. On February 8, 2010, Ms. Hill issued three settlement checks and forwarded the checks and settlement release documents to Mr. Lee. Thereafter, according to respondent’s file notes, both Mr. Lee and Daniel Smart, a law student employed by respondent’s law firm, called and presented the settlement offer to Mr. Phoenix. Mr. Smart spoke to Mr. Phoenix on March 12, 2010 Land Mr. Lee spoke to Mr. Phoenix on March 16, 2010. Mr. Phoenix immediately rejected the settlement offer. Respondent claims that he then met with Mr. Phoenix in April 2010 and secured his permission to settle the claim for the amounts previously rejected; however, Mr. Phoenix denies that such a meeting took place at that time, and there is nothing in respondent’s file documenting the meeting. In any event, the settlement checks which had been issued by Republic were not endorsed by Mr. Phoenix or respondent, and respondent took no action to secure the endorsement of the mortgage holder Bank of America on the checks. Ultimately, there is no activity documented in Mr. Phoenix’s file between March 2010 and December 2010, by which time the two-year prescriptive period had run on the claim against Republic. Respondent did not file a lawsuit against Republic on behalf of Mr. Phoenix prior to the running of prescription. For his part, Mr. Phoenix contends that he did not meet with respondent until January 2011, approximately four months after prescription had run on his claim against Republic. According to Mr. Phoenix, he initially declined tó accept the settlement that had been negotiated on his behalf, but after discussing the matter with his wife, he informed respondent that he would settle the matter for what was offered in an effort to “move on.” Respondent agreed to waive his attorney’s fees and advised Mr. Phoenix of his right to assert a malpractice action against him. Despite the fact that the claim against it was prescribed,. Republic issued new checks in amounts identical to the previous offers. Mr. Phoenix and his wife executed releases and accepted the checks on January 5, 2011. The ODC alleges that respondent’s conduct violates the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.7 (a lawyer shall not represent a client if the representation involves a concurrent conflict of interest wherein there is á significant risk that the ^representation of the client will be materially limited by a personal interest of the lawyer), 5.3 (a lawyer having direct supervisory authority over a nonlawyer shall make reasonable efforts to ensure that the person’s conduct is compatible with the professional obligations of the lawyer), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). DISCIPLINARY PROCEEDINGS In April 2013, Mr. Phoenix filed a complaint against respondent with the ODC. In August 2015, the ODC filed formal charges against ■ respondent. Respondent, through counsel, answered the formal charges and denied the charged misconduct. This matter then proceeded to a formal hearing on the merits, conducted by a hearing committee on December 14-15, 2015. The committee heard testimony from the following witnesses: respondent’s son, Joseph Bruno, Jr.; Brandon Duhon, James Freeman, and Phillip Lee of Full Scope; Republic claims adjuster Amy Hill; Daniel Smart, a law student employed by respondent; Mallory Comeaux, formerly employed by respondent as a legal assistant; complainants Clarence and Darlene Phoenix; Melissa DeBarbieris, an associate attorney employed by respondent; and respondent. Hearing Committee Report The hearing committee’s report is sixty pages in length and contains sixty-three separate findings of fact. The majority of the committee’s factual findings are incorporated into the factual findings section above. Based on its factual findings, the committee determined respondent violated Rules 1.3 and 1.4 of the Rules of Professional Conduct by failing to communicate with Mr. Phoenix for | ¡¡approximately nine months, during which time prescription ran on his claim against Republic, and by failing to timely file suit against Republic. The committee did not find a violation of the remaining rules charged in the formal charges. The committee determined that respondent’s misconduct was largely negligent, but to the extent that procedures he had in place in his firm contributed to the misconduct, the conduct was knowing. The injury caused was slight, if any at all, but the potential for injury was significant. The applicable baseline sanction is suspension. The committee recognized the following aggravating factors: a prior disciplinary record and substantial experience in the practice of law. The committee found the following mitigating factors are present: absence of a dishonest or selfish motive, timely good faith effort to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, delay in the disciplinary proceedings, and remorse. Based upon these findings and a review of similar case law, the committee recommended that respondent be suspended from the practice of law for one year and one day, with all but ninety days deferred, followed by a two-year period of unsupervised probation. The committee further recommended that respondent be required to attend the Louisiana State Bar Association’s (“LSBA”) Ethics School. The ODC filed an objection to the hearing committee’s report and recommended sanction. The ODC took issue with some of the committee’s factual findings, as well as its finding that some of the alleged rule violations were not proven by clear and convincing evidence. Respondent accepted the committee’s findings of fact and rule violations, but asserted the violations do not warrant a sanction, or alternatively, warrant only a public reprimand. | ^Disciplinary Board Recommendation After review, the disciplinary board determined that ■ the hearing committee’s findings of fact are supported by the record and are not manifestly erroneous. The board also determined that the committee correctly applied the Rules of Professional Conduct,' except that the board also found a violation of Rule 8.4(a). The board determined that respondent violated duties owed to his client. The board agreed with the committee that respondent acted both negligently and knowingly - negligently in the specific failure to exercise due diligence and to communicate adequately, but knowingly to the extent that he relied on case management procedures that failed in this instance. Respondent’s misconduct caused actual harm because Mr, Phoenix lost his right of action against Republic. However, the extent of the harm does not appear to be significant because Mr. Phoenix ultimately accepted the offer from Republic, and there is no evidence that' Mr. Phoenix would have obtained a greater recovery from the insurance company had a lawsuit been filed. The board determined that the applicable baseline sanction is suspension. The board, recognized the following aggravating factors: a prior disciplinary record and substantial experience in the practice of law. The board found the following mitigating factors are present: absence of a dishonest or selfish motive, timely good faith effort, to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, delay in the disciplinary proceedings, remorse, and remoteness of prior offenses. Considering these circumstances, and the court’s prior jurisprudence addressing neglect of client matters which results in the.client losing his right of action, the board concluded that a ninety-day suspension is appropriate here. However, given the significant mitigating factors and respondent’s attempt to |smitigate the harm to Mr. Phoenix by waiving his fees, the board recommended that all but thirty days of the suspension be deferred. The board determined that nothing in the record supports a recommendation for monitoring via a probationary period or that respondent would benefit from attending the LSBA’s Ethics School Accordingly, the board recommended that respondent be suspended from the practice of law for ninety days, with all but thirty days deferred. The board additionally recommended that any violation of the Rules of Professional Conduct within that time period should result in the deferred suspension becoming executory. Finally, the board recommended respondent be assessed with the costs and expenses of this proceeding. Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation. DISCUSSION Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La. 3/11/94), 633 So.2d 150. The record convincingly supports the hearing committee’s finding that respondent neglected Mr. Phoenix’s insurance claim, causing it to prescribe. Respondent also failed to communicate with Mr. Phoenix in an adequate manner. | nThis misconduct amounts to a violation of Rules 1.3 and 1.4 of the Rules of Professional Conduct. Having found evidence of professional misconduct, we now turn to a determination-of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline' to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984). Respondent violated duties owed to his client. His neglect caused actual harm because Mr. Phoenix lost his right of action against his insurance company; however, the harm is minimal, because Mr. Phoenix was ultimately compensated by the insurer. Respondent's misconduct was negligent and knowing. The applicable baseline sanction in this matter is suspension. The record supports the aggravating and'mitigating factors found by the disciplinary board. In prior cases involving a lawyer’s neglect' of a-client matter that results in the client losing his right of action, we have imposed discipline ranging from a public reprimand to short suspensions which may be fully or partially deferred. See, e.g., In re: Regan, 04-1365 (La. 10/15/04), 885 So.2d 514. The board recommended that respondent be suspended for ninety days, with all but thirty days deferred in consideration of the substantial mitigating factors present. Considering the record of this matter, and the absence of any objection by the parties to the board’s recom'mendation, we cannot say that this sanction is inappropriate. |! (Accordingly, we will suspend respondent from the practice of law for ninety days, with all but thirty days deferred. Any misconduct during that time will be grounds for making the deferred portion of the suspension executory. DECREE Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Joseph M. Bruno, Louisiana Bar Roll number 3604, be and he hereby is suspended from the practice of law for a period of ninety days. It is further ordered that all but thirty days of the suspension shall be deferred. Any misconduct during that time will be grounds for making the deferred portion of the suspension executory. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid. , Mr. Bruno, Jr. is not charged with any misconduct in relation to this matter.