*1020 |,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, O’Neal Jones, Jr., an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
At all times relevant to these proceedings, respondent shared office space with New Iberia attorney Owen J. Trahant, Jr., whose practice was confined to the handling of real estate closings. From the mid-1990’s until he moved out of Mr. Tra-hant’s office in April 2001, respondent assisted Mr. Trahant by performing title examinations and notarial services for some of the numerous closings that were assigned to Mr. Trahant’s office for handling. The ODC alleges that respondent engaged in the following instances of misconduct during the period of his association with Mr. Trahant:

02-DB-110

Count I — The Landry Matter
Alton Landry, Sr. and his wife, Gloria Landry, had six children. After Mrs. Landry died, Mr. Landry and one of his daughters, Reggie Landry, applied for a loan using the family home as collateral. In 2000, the lender sent a request to Mr. 12Trahant’s office for a title commitment. Respondent performed the title examination and discovered that no succession had ever been opened for Mrs. Landry. Mr. Trahant’s staff therefore prepared succession documents for the heirs to sign in connection with the loan closing, as well as an act of donation by which the Landry children would donate their interests in *1021 the home to their father. Respondent subsequently notarized the signatures of the heirs on the succession and donation documents, although he was not present when the documents were signed. It was later alleged that the signatures of some of the Landry children were forged on the act of donation.
Respondent acknowledges that he notarized the succession and donation documents outside the presence of the signatories and caused the act of donation to be filed in the conveyance records of St. Martin Parish.[1] The ODC alleges that respondent’s conduct violated Rules 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count II — The Woods Matter
Ulysses Woods had ten children. After Mr. Woods died, two of his children applied for a loan using the family home as collateral. In March 2000, the loan originator, Chester Heels, sent a request to Mr. Trahant’s office for a title commitment. Mr. Heels also requested the preparation of an act of donation wherein eight of Mr. Woods’ children would donate their interests in the property to the two siblings who had applied for the loan. Mr. Trahant’s staff prepared the |sact of donation as requested and respondent subsequently notarized the signatures of the heirs on the document, although he was not present when it was signed.[2]
Respondent acknowledges that he notarized the act of donation outside the presence of the signatories and caused it to be filed in the conveyance records of St. Martin Parish. The ODC alleges that respondent’s conduct violated Rules 8.4(c) and 8.4(d) of the Rules of Professional Conduct.

ll-DB-031

Count I — The Thomas Matter
In July 2000, Youlanda Thomas entered into a written purchase agreement with Jose Vasquez to buy a home on River Ridge Drive in Lake Charles for $135,000.[3] Ms. Thomas applied to a mortgage broker, Infinity Mortgage Services, Inc. (“Infinity”), to obtain financing in connection with the purchase. Infinity secured funding for Ms. Thomas’s mortgage from American Fidelity, Inc. and retained Mr. Trahant’s law office to handle the closing. The title examination and the closing were actually performed by respondent.
Prior to Ms. Thomas’s closing, First Premier Financial Services, Inc. (“First Premier”) was inserted into the transaction without her knowledge or consent. Respondent and Anthony Grishby were directors and incorporators of First Premier; Mr. Grishby was also a director and incorporator of Infinity. On August 22, 2000, First Premier purchased the River Ridge Drive property from Mr. Vasquez for $135,000, the true sales price. Mr. Grishby executed the Cash Sale on behalf of First Premier, and respondent notarized his signature.[4] The sales price was then increased by $20,000, and by Cash Sale *1022 dated August 22, 2000, First |4Premier sold the River Ridge Drive property to Ms. Thomas for the inflated price of $155,000. Respondent also notarized the Cash Sale documenting this transaction. Respondent then notarized a $170,000 mortgage and related loan closing documents between Ms. Thomas, as the borrower, and American Fidelity, as the lender, all of which were dated August 23, 2000. In this transaction, the loan closing was designated as a “refinance” rather than a new purchase.
To portray the sale as a “refinance” transaction, Ms. Thomas had to appear as the owner of the River Ridge Drive property prior to closing. On August 17, 2000, an unknown person(s) created a fraudulent mortgage verification on First Premier letterhead addressed to Infinity. The mortgage verification falsely represented First Premier as a lien holder, and falsely represented that Ms. Thomas borrowed $154,000 from First Premier in July 1999 in connection with a mortgage on the River Ridge Drive property. The mortgage verification also listed a fabricated mortgage payment history. These documents created the untruthful impression that Ms. Thomas owned the River Ridge Drive property and was seeking to refinance her mortgage.
Having personally conducted the title examination, respondent knew or should have known that Ms. Thomas did not own the River Ridge Drive property prior to the closing in August 2000, and that she could not refinance a loan on property she did not yet own. Respondent also knew or should have known that First Premier did not have a mortgage on the property. Nevertheless, respondent handled and notarized all documents in connection with the cash sales and loan closing described above.
The ODC alleges that respondent’s conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(c) of the Rules of Professional Conduct.
JyCount II — The Chaisson Matter
Clifton Chaisson, Sr. and his wife, Delores Chaisson, had seven children. The couple owned property on Theobald Road in St. Martinville which was encumbered by two mortgages. In 1999, after Mr. Chaisson died, Mrs. Chaisson applied to Infinity for a loan to refinance the mortgages. Infinity obtained funding for the loan from Equicredit Corporation and retained Mr. Trahant’s law office to handle the closing, which required the opening of a succession for Mr. Chaisson, as well as an act of donation by which the Chaisson children would donate their interests in the home to their mother.
Respondent was assigned to handle the loan closing and the succession and donation matters. Respondent closed the loan in June 1999, but failed to file the succession documents and obtain a judgment of possession until August 2000, some fourteen months later. Nevertheless, the owner’s affidavit notarized by respondent at the time of the loan closing falsely stated that Mrs. Chaisson “has a perfect right to convey good, fee simple, merchantable title” to the Theobald Road property. At the time respondent notarized this document, he knew or should have known that Mrs. Chaisson had not been put into possession of either her late husband’s one-half interest in the property or her children’s interest in the property.
At some point, respondent became aware that two of Mr. Chaisson’s seven children had inadvertently been omitted from the judgment of possession and other succession documents. However, he failed to take any remedial action.
The ODC alleges that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in *1023 representing a client), 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of fact or law previously made to the tribunal by the lawyer), 3.3(a)(3) (a lawyer who comes to know of the falsity of evidence offered |fiby the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
In October 2002, the ODC filed formal charges against respondent in 02-DB-110. Respondent answered the formal charges and admitted that he did not properly notarize the documents at issue in the Landry and Woods matters. The proceeding was then continued without date to allow the ODC to investigate other, similar matters. During the investigation, the ODC learned that a federal criminal probe was ongoing into the fraudulent real estate scheme perpetrated by Mr. Grishby. As a result, the ODC delayed taking any further action pending the conclusion of the federal investigation. In July 2005, a grand jury in the Western District of Louisiana handed up a 65-count indictment against Mr. Grishby and others.[5] Neither respondent nor Mr. Trahant was named in the indictment. When it became clear that the United States Attorney was not pursuing criminal charges against respondent or Mr. Trahant, the ODC concluded its investigation and filed the second set of formal charges (ll-DB-031) against respondent in March 2011.[6] Respondent answered the formal charges and denied any misconduct. In June 2011, the hearing committee granted the ODC’s motion to consolidate both sets of formal charges filed against respondent. The matter then proceeded to a formal hearing on the merits.
j ^Hearing Committee Report
After considering the testimony and evidence presented at the hearing, the committee made the following factual findings:
Count I of 02-DB-110 — Respondent admitted that he notarized the signatures of the Landry heirs on succession and donation documents without the heirs being present. Respondent knew that would make the donation invalid but caused it to be filed in the conveyance records of the parish. Respondent further admitted that he did nothing to correct the problem once suit was filed by some of the heirs alleging that the signatures were forged and, as such, created many problems within the Landry family. Based on these findings, the committee determined that respondent failed to act with reasonable diligence in representing a client and made a misrepresentation to the court by knowingly filing documents that were not signed before him.
Count II of 02-DB-110 — Respondent admitted that he notarized the signatures of the Woods heirs on an act of donation *1024 without the heirs being present. Respondent knew that would make the donation invalid but caused it to be filed in the conveyance records of the parish. Respondent did nothing to correct the problem regarding the invalid donation. Based on these findings, the committee determined that respondent failed to act with reasonable diligence in representing a client and made a misrepresentation to the court by knowingly filing documents that were not signed before him.
Count I of ll-DB-031 — Respondent received a loan request from Mr. Trahant’s office to do a title examination in the You-landa Thomas matter. Respondent’s title examination accurately disclosed the record ownership and the liens or mortgages that existed against the property. Respondent did not prepare any of the documents presented at closing for signature by the parties. No|sevidence was presented that respondent communicated in any fashion with the lender, American Fidelity, or the mortgage broker, Infinity.
Respondent and Anthony Grishby formed a company by the name of First Premier Financial Services. The purpose of the company was to buy houses, renovate them, and qualify people to purchase them. No evidence was presented to contradict respondent’s testimony that the company never did any business. Respondent knew Mr. Grishby prior to Ms. Thomas’s closing, having previously closed loans involving Mr. Grishby when Mr. Grishby worked for another mortgage company. Represented by Mr. Grishby, First Premier was paid $20,000 to satisfy a non-existent mortgage and Infinity, also an Anthony Grishby company, was paid a commission of $10,000. Respondent did not close the sale of the property to First Premier but did close the sale from First Premier to Ms. Thomas.
No evidence was introduced showing that respondent received anything of value as a result of his role in these transactions, other than the splitting of the normal fees with Mr. Trahant. The only evidence introduced regarding any money that might have been received by respondent was the testimony of Mr. Trahant, who claimed that an FBI agent told him that a check had been payable to respondent and that respondent endorsed it and paid one of his creditors. No other details were given regarding this incident and no corroborating evidence was presented that it ever happened.
The committee found respondent truly believed that he considered himself nothing more than a notary and agent of Mr. Trahant. Respondent’s view of his responsibility was that he simply signed documents prepared by Mr. Trahant’s office for a closing. The fact that respondent and Mr. Trahant closed between 80 and 120 loans a month speaks to the real problems with respondent’s actions and whether respondent could have ever acted with reasonable diligence in representing his clients. The committee found it even more disturbing that | ¡respondent continued to take the position in this and other matters that he felt he had no responsibility regarding the documents he signed that were generated by Mr. Trahant’s office. Respondent’s position was that he did not prepare any of the documents, and if any mistakes were made, they were not made by him but by Mr. Trahant’s office.
Respondent correctly noted that many of the events at issue occurred a long time ago, and he stated that he could not remember the details. However, respondent’s view that the errors made were simply the fault of Mr. Trahant’s office and were not his own flies in the face of the responsibilities lawyers have simply because they are acting as lawyers. Respon *1025 dent was acting in agreement with Mr. Trahant to accomplish a specific goal and they both seem to have failed miserably in doing so. The committee found that the actions of respondent were grossly negligent and that he failed to act with diligence in the representation of his clients. If nothing else, he facilitated the sloppy preparation and handling of documents generated by Mr. Trahant’s office, which in turn allowed others to profit from their criminal acts. The committee did not find that respondent committed acts of fraud, deceit, or dishonesty in this matter.
Count II of ll-DB-031 — Although it is true that in a succession practice an attorney often has to rely solely upon the information provided by his clients, the committee found that respondent made no effort to verify whether everyone who should have been included in Mr. Chais-son’s succession was actually included. This is in keeping with respondent’s position that he was only supposed to show up at the loan closing and sign his name. As a result, two of Mr. Chaisson’s heirs were left out of the succession. Respondent again testified that the documents in this matter were prepared by Mr. Trahant’s office. However, noting that the documents were prepared for respondent’s signature as attorney for petitioners, the committee questioned how he could sign the pleadings and at the same time claim |inno responsibility for them because they were prepared in another attorney’s office. Additionally, the committee pointed out that respondent did nothing to rectify the situation. Respondent’s answer for his inaction was again that Mr. Trahant’s office was responsible for the significant delay in filing the succession and the late notice he received regarding the problem in this matter. He also testified that prescription had run and there was nothing he could do. The committee rejected respondent’s excuses and found that harm was caused to the Chaisson family as a result of his lack of diligence in this matter.
Based on these factual findings, the committee determined that respondent violated Rules 1.3, 3.3(a)(1), 3.3(a)(3), 8.4(a), 8.4(c) (in Counts I and II of 02-DB-110 only), and 8.4(d) of the Rules of Professional Conduct. The committee determined that respondent acted knowingly in Counts I and II of 02-DB-110, and that his conduct was grossly negligent in Count I of ll-DB-031. The committee made no finding as to the mental element involved in respondent’s conduct in Count II of ll-DB-031. The committee found by his lack of diligence, which allowed others to perpetrate criminal acts upon Youlanda Thomas (Count I of ll-DB-031), respondent had caused “extreme harm” to Ms. Thomas. The applicable baseline sanction in this matter is suspension.
In mitigation, the committee found the following factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse. The committee found the following aggravating factors are present: a selfish motive[7] and substantial experience in the practice of law (admitted 1986).
| nFor the foregoing reasons, the committee recommended that respondent be suspended from the practice of law for one year, with all but four months deferred.
Both respondent and the ODC objected to the hearing committee’s report and recommendation.

*1026
Disciplinary Board Recommendation

After reviewing the record, the disciplinary board determined that the majority of the hearing committee’s factual findings are not manifestly erroneous. However, the board took issue with several of the committee’s findings in the Youlanda Thomas matter (Count I of ll-DB-031), most notably its conclusion that respondent’s handling of that matter was grossly negligent but not dishonest. The board pointed out that respondent’s participation was integral to the success of the fraudulent schemes involving First Premier, as without his complicity, the fraud upon Ms. Thomas could not have been accomplished. Based upon these findings, the board determined that respondent violated the Rules of Professional Conduct as follows:
Count I of 02-DB-110 — Respondent violated Rule 8.4(c) by improperly notarizing several documents and falsely attesting that the documents had been signed in his presence. He violated Rule 8.4(d) by doing nothing to correct the problem once suit was filed by the Landry heirs, causing many problems within the Landry family and delaying the succession of Mrs. Gloria Landry for several years. Additionally, although a violation of Rule 1.3 was not specifically charged in the formal charges, respondent exhibited a lack of diligence in notarizing documents in the Landry matter and then failing to correct the problem so that the succession could be completed.[8] The board did not agree with the hearing committee that respondent 112vioIated Rules 3.8(a)(1) and 3.3(a)(3) in this count, as the act of donation was filed in the public conveyance records only, not with a court.
Count II of 02-DB-110 — As in Count I, respondent violated Rules 8.4(c) and 8.4(d) by improperly notarizing the act of donation in the Woods matter and then doing nothing to correct the invalid donation. Likewise, the same conduct constitutes a violation of Rule 1.3. The board did not agree with the hearing committee that respondent violated Rules 3.3(a)(1) and 3.3(a)(3) in this count, as once again, nothing indicates that respondent filed false documents with a court.
Count I of ll-DB-031 — By his handling of the Thomas closing, respondent violated Rules 1.3 and 8.4(c). He signed and notarized loan closing documents that he knew or clearly should have known contained false information. These fraudulent loan documents were used to defraud Ms. Thomas out of tens of thousands of dollars, which could not have occurred but for respondent’s actions in facilitating the closing. However, respondent’s conduct was not prejudicial to the administration of justice, and therefore he did not violate Rule 8.4(d). Respondent also did not violate Rules 3.3(a)(1) and 3.3(a)(3) in this count, as nothing indicates he filed false documents with a court.
Count II of ll-DB-031 — By his handling of the Chaisson matter, respondent violated Rules 1.3, 3.3(a)(1), 3.3(a)(3), 8.4(a), 8.4(c), and 8.4(d). Respondent made no effort to verify whether everyone who should have been included in Mr. Chaisson’s succession was in fact included. He signed and notarized the succession documents that contained false statements of fact and then caused them to be filed with the court. He thereafter made no effort to correct these false statements.
The board determined that respondent violated duties owed to his clients, the legal system, and the profession. His actions were knowing, and in some instances | ^intentional, and resulted in actual harm *1027 to his clients, the legal profession, and the integrity of the public record.
In mitigation, the board found only that respondent has no prior disciplinary record.[9] The board found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law.
Citing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the applicable baseline sanction is suspension. Relying on the prior jurisprudence of this court,[10] and in light of the fact that respondent engaged in a pattern of misconduct including multiple offenses, the board determined that the sanction recommended by the committee is too lenient. Accordingly, the board recommended that respondent be suspended from the practice of law for two years.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an | ^independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
Respondent acknowledges that in the Landry and Woods matters, he notarized legal documents outside the presence of the signatories and caused the documents to be filed in the conveyance records. In the Thomas matter, respondent closed a real estate transaction which was part of an illegal “house flipping” scheme. Finally, in the Chaisson matter, in which he acted as the attorney for the heirs in a succession, respondent sighed pleadings which omitted two of the seven heirs and then failed to take any remedial action after learning of the error. Based on these findings, we agree that respondent violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional, misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary *1028 proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to his clients, the legal system, and the legal profession. His misconduct caused actual harm to his clients and to the legal profession. The baseline sanction for this type of misconduct is suspension.
The record supports a finding that the following aggravating factors are present in this matter: a dishonest or selfish motive, a pattern of misconduct, | Ir,multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and substantial experience in the practice of law. The only mitigating factor present is the absence of a prior disciplinary record.
Considering all the circumstances, we agree with the disciplinary board that respondent’s pattern of serious misconduct warrants a severe sanction. Accordingly, we will accept the board’s recommendation and suspend respondent from the practice of law for two years.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that O’Neal Jones, Jr., Louisiana Bar Roll number 17650, be and he hereby is suspended from the practice of law for two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. The succession documents prepared by Mr. Trahant’s office were never filed into the public record.

. Unlike the act of donation at issue in Count I, the Landry matter, there is no allegation that the signatures on the act of donation in the Woods matter were forged.

. Ms. Thomas died prior to the hearing in this matter.

. Respondent did not notarize the signature of the seller, Mr. Vasquez.

. In 2006, Mr. Grishby pleaded guilty to one count of mail fraud arising out of what the factual basis described as "an elaborate scheme to obtain loans for unqualified borrowers and to falsely inflate fees and commissions for loans brokered by his mortgage brokerage company, Infinity Mortgage Services, Inc.” Mr. Grishby was sentenced to serve 36 months in federal prison.

. At that time, the ODC also filed formal charges against Mr. Trahant. The ODC moved to consolidate the formal charges for hearing, but the motion was opposed by both respondent and Mr. Trahant and was subsequently denied. Thereafter, respondent's case and Mr. Trahant’s case were tried separately before different hearing committees. On December 14, 2012, we rendered our opinion in In re: Trahant, 12-1435 (La. 12/14/12), 108 So.3d 67, suspending Mr. Trahant from the practice of law for six months, followed by a one-year period of supervised probation.

. The committee did not find that respondent acted dishonestly in either of the counts in ll-DB-031, but that he did act selfishly in "closing too many loans for his own economic benefit and at the same time failing to acknowledge his role and responsibility, as an attorney, to his client and his attempt to blame all his mistakes on others.”

. The board found respondent had fair and adequate notice of several uncharged rule violations though the factual allegations contained in the formal charges.

. The board specifically rejected the committee's finding that respondent has shown remorse for his misconduct, citing the fact that he blames Mr. Trahant for any “mistakes” that were made. The board also pointed out that respondent “even pointed the finger at one of the victims [Ms. Thomas], a complainant in this matter, who was deceased at the time of the hearing. He went so far as to suggest that Ms. Thomas could have been co-conspiring with Mr. Grishby or at least [was] a knowing participant in the fraudulent scheme.”

. The board cited In re: Stephens, 94-1924 (La. 11/18/94), 645 So.2d 1133 (eighteen-month suspension imposed upon an attorney who notarized a forged affidavit and then filed it into the court record to defeat a motion for summary judgment; the attorney had a prior disciplinary history consisting of a one-year suspension imposed in 1993); In re: Bailey, 03-0839 (La.6/6/03), 848 So.2d 530 (two-year suspension imposed upon an attorney who sought a continuance in a pending legal matter by misleading the court about a false scheduling conflict, and attempted to introduce a medical report into evidence when he knew the report had been altered); and In re: Ungar, 09-0573 (La. 10/30/09), 25 So.3d 101 (three-year suspension imposed upon an attorney who intentionally withheld information from his clients regarding a settlement offer in order to facilitate the collection of an excessive fee; the court rejected the lawyer’s attempt to blame his out-of-state co-counsel for the misconduct).