*515 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Martin E. Regan, Jr., an attorney licensed to practice law in Louisiana.
STIPULATED FACTS
The following facts are not in dispute, having been stipulated to by respondent and the ODC:
On January 21, 1995, Leonard Chase, II retained respondent’s law firm to represent him in a personal injury claim against the New Orleans Police Department and the City of New Orleans. On October 2, 1995, a petition for damages was prepared and filed on behalf of Mr. Chase by respondent or a member of his firm. Leonard Chase v. New Orleans Police Dept., et al., No. 95-14810 on the docket of the Orleans Parish Civil District Court. The petition specified that service of citation be withheld. By letter to the clerk of court dated December 30, 1996, respondent requested that service of citation be effected. However, respondent took no steps to determine whether service was, in fact, made in accordance with this request. By letter dated February 28, 2000, respondent again requested service of the petition and enclosed a check in the amount of $30 to cover the cost thereof. Service was ^ultimately made on both defendants on March 27, 2000. On April 2, 2001, Mr. Chase’s lawsuit was dismissed as abandoned on an ex parte motion of the City of New Orleans. Respondent did not challenge the dismissal of the suit, nor has he made any attempt to have the suit reinstated.
DISCIPLINARY PROCEEDINGS
In March 2000, Mr. Chase filed a complaint against respondent with the ODC. On September 10, 2002, the ODC filed one count of formal charges against respondent, alleging that he violated Rule 1.3 of the Rules of Professional Conduct by failing to act with reasonable diligence and promptness in the Chase matter. Respondent answered the formal charges and admitted the factual allegations therein, but given the circumstances of the particular case, denied that his conduct violated the Rules of Professional Conduct.
This matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee on October 17, 2003. In his testimony, respondent ex *516 plained, that he did not pursue Mr. Chase’s lawsuit because he concluded that it was “fraudulent” and without merit.[1] Respondent could not reach Mr. Chase to advise him of his decision, but rather than withdrawing from the case, he simply took no action to prosecute the suit filed in October 1995. Respondent had no further contact with his client until Mr. Chase appeared in respondent’s office on February 19, 2000. After ^respondent informed Mr. Chase that his suit was “dead,” Mr. Chase requested his file and discharged respondent. Respondent testified that in his view, Mr. Chase suffered no injury by the dismissal of his suit; rather, respondent asserted that it was he who was injured, given that his firm expended a considerable amount of time and money ($803 in costs, as well as the salaries of his legal staff) on the “bogus” case.

Hearing Committee Recommendation

Considering the stipulated facts, as well as the testimony adduced at the hearing, the hearing committee determined that respondent failed to use reasonable diligence in his representation of Mr. Chase. Accordingly, the committee agreed that respondent violated Rule 1.3 of the Rules of Professional Conduct as charged in the formal charges. It found respondent violated duties owed to his client and to the legal profession, and his failure to fulfill his duty to Mr. Chase was knowing and willing, resulting in Mr. Chase’s suit being dismissed on grounds of abandonment. The committee determined the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
As aggravating factors, the committee recognized respondent’s prior disciplinary offenses,[2] dishonest or selfish motive, and substantial experience in the practice of law (admitted 1975). The committee also felt that respondent had not demonstrated sufficient remorse and indicated that it would “draw an inference against Respondent” as to his good character and reputation because there is no evidence of | ¿such in the record.[3] In mitigation, the committee acknowledged respondent’s personal and family problems,[4] *517 as well as his cooperative attitude toward the disciplinary proceeding.
Considering all the facts of this case, the committee recommended that respondent be suspended from the practice of law for a period of one year. The committee further recommended that the suspension be deferred in full on the condition that respondent complete a minimum of eight additional hours of continuing legal education in the area of law practice management.
Neither respondent nor the ODC objected to the sanction recommended by the hearing committee; however, respondent did object to the committee’s application of the aggravating and mitigating factors.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board concurred in the hearing committee’s factual findings and application of the Rules of Professional Conduct. Like the committee, the board found respondent violated duties owed to his client, Mr. Chase, and to the profession. It recognized his actions were knowing and caused injury to Mr. Chase in that his suit was dismissed on grounds of abandonment before he had an opportunity to have his day in court.
| sAIthough it agreed with the committee’s factual findings, the board largely rejected the hearing committee’s analysis of the aggravating and mitigating factors.[5] The board found the record supports the following aggravating factors: prior disciplinary offenses and substantial experience in the practice of law. In mitigation, the board acknowledged the absence of a dishonest or selfish motive, respondent’s personal problems, and his cooperative attitude toward the disciplinary proceeding.
Turning to the issue of an appropriate sanction for respondent’s misconduct, the board noted the baseline sanction is suspension under the ABA’s Standards for Imposing Lawyer Sanctions.[6] The court’s prior jurisprudence in cases involving the neglect of a legal matter which results in a client’s case being dismissed on grounds of abandonment suggests that the suspension generally ranges from six months to one year and one day, perhaps with all or part of the suspension deferred. The board cited several such cases, specifically noting the similarity of In re: Holmes, 03-1959 (La.9/19/03), 855 So.2d 736, and In re: Dunn, 98-0535 (La.6/5/98), 713 So.2d 461, to the instant case. The board acknowledged that the sanction recommended by the hearing committee is consistent with these authorities. Nonetheless, the board *518 concluded that it is appropriate to deviate downward from the committee’s proposed sanction, “because of the mitigating factors present and because of the frivolous nature of Mr. Chase’s lawsuit.”
| fiBased on this reasoning, the board recommended that respondent be suspended from the practice of law for six months, to be deferred in full on the condition that respondent complete a minimum of eight additional hours of continuing legal education in the area of law practice management. The board also noted that any misconduct occurring during a six-month period following the finality of the court’s order should be grounds for making the deferred period of suspension executory. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In the instant case, the stipulated facts support a finding that respondent neglected Mr. Chase’s legal matter, resulting in the dismissal of his suit on grounds of abandonment, in violation of Rule 1.3 of the Rules of Professional Conduct.
17Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record demonstrates respondent’s actions were knowing and caused injury to Mr. Chase. Respondent owed his client a duty to move his lawsuit forward with reasonable diligence and promptness. He failed to do so, and failed to promptly inform Mr. Chase of his decision that he would not pursue the litigation. As a result of respondent’s inaction, Mr. Chase’s suit was dismissed as abandoned. The baseline sanction for this misconduct is a suspension from the practice of law ranging from six months to one year and one day, which may be fully or partially deferred.
Several mitigating factors are present in this case, including the absence of a dishonest or selfish motive, respondent’s personal problems during the time of the misconduct, and his cooperative attitude toward the disciplinary proceeding. Taken as a whole, the record supports the conclusion that respondent’s mishandling of Mr. Chase’s case was not intentional, *519 but stemmed in large part from poor office management.
Accordingly, we find the appropriate sanction for respondent’s misconduct is a suspension from the practice of law for a period of six months. In light of the mitigating factors, we will defer that suspension in its entirety, and place respondent on unsupervised probation for a period of six months, subject to the condition that |srespondent obtain eight hours of CLE in the area of law practice management, in addition to his ordinary CLE obligations, during the probationary period. Any failure of respondent to comply with this condition, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Martin Edward Regan, Jr., Louisiana Bar Roll number 11153, be suspended from the practice of law for a period of six months. It is further ordered that said suspension shall be fully deferred and respondent shall be placed on unsupervised probation for a period of six months, subject to the condition that during the probationary period, he complete a minimum of eight credit hours of continuing legal education in the area of law practice management, in addition to his regular mandatory continuing legal education requirements. Respondent’s failure to comply with this condition, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Calogero, C.J. recused.

. According to Mr. Chase, he was injured in a violent, unprovoked attack upon him by the police as he left the Orleans Parish Prison after posting bond on a DWI charge. However, when respondent reviewed Mr. Chase's medical records for the first time in early 1997, he learned that Mr. Chase was in custody when he was transported to Charity Hospital directly from the psychiatric unit of the Orleans Parish Prison. The medical records also reflect that Mr. Chase’s mental status was "altered” upon arrival in the emergency room, and contain no indication that he had any injuries consistent with a recent beating. The inconsistencies in Mr. Chase's story, coupled with the fact that the New Orleans Police Department had no officers on duty in the Orleans Parish Prison, led respondent to conclude that Mr. Chase's claim of injury by the police was not legitimate.

. In 2002, respondent was publicly reprimanded by the disciplinary board for permitting his paralegal, who is a disbarred lawyer, to attend and actively participate in approximately twenty depositions over a nine-month period (00-DB-075). In 1997, respondent was admonished by the disciplinary board for failing to supervise office personnel who had not returned all of a client's file upon the termination of the representation (97-ADB-033).

. The disciplinary board later rejected the committee’s "presumption” of bad character. See infra note 5. We agree with the board that the committee's analysis is in error. While good character may be proved as a mitigating factor, there is no negative inference if a respondent fails to produce such evidence.

. Respondent’s wife died of cancer in January 1996. During her illness, respondent's health insurer canceled his policy and respondent had to pay for all of his wife's medical treatment out of his own pocket. Respondent also has three major children who suffer from muscular dystrophy, one of whom also suffers *517 from mental retardation. The children are cared for around the clock in respondent's home at great financial expense to respondent.

. The board correctly noted that (1) no presumption of bad character or reputation should be drawn from a respondent’s failure to produce evidence of good character or reputation; (2) respondent did not fail to demonstrate remorse or otherwise refuse to acknowledge the wrongful nature of his conduct, as he admitted at the hearing that he should have handled Mr. Chase’s case differently; and (3) respondent was not prompted to neglect Mr. Chase’s case by any dishonest or selfish motive.

. Standard 4.42 suggests that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client. Respondent’s knowing inaction in Mr. Chase’s legal matter caused injury to his client, whose case was abandoned. Likewise, Standard 7.2 suggests that suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. By failing to properly handle Mr. Chase’s legal matter, respondent also violated his duty as a professional, and caused injury to his client.