*899 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kenneth J. Beck, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
In July 2007, the ODC filed two counts of formal charges against respondent in 07-DB-033. Respondent answered the formal charges, admitting the truth of some of the factual allegations but denying that any misconduct occurred. The formal charges were heard by a hearing committee in May 2009.
In July 2009, the ODC filed a second set of formal charges against respondent in 09-DB-050. Respondent answered the formal charges and admitted that he “made errors” in handling the legal matter in question; however, he denied that he committed any intentional misconduct. In December 2010, the ODC filed a third set of formal charges in 10-DB-090. Once again, respondent denied any intentional misconduct occurred. In March 2011, the hearing committee chair granted a motion by the ODC to consolidate 09-DB-050 and 10-DB-090. The consolidated matters proceeded to a formal hearing on the merits conducted by the hearing committee in April 2012.
|2In June 2012, the formal charges pending against respondent were consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

07-DB-033

By way of background, respondent was the general counsel for Bail Bonds Unlimited (“BBU”), a bail bonding company owned by Louis Marcotte which had a near monopoly on the bond writing business in Jefferson Parish. Respondent considered BBU to be his primary client, and he had a law office in one of Mr. Mar-cotte’s buildings;[1] however, respondent *900 also maintained a separate general civil practice. Norman Bowley was an accountant who worked for BBU as its chief financial officer. In this capacity, Mr. Bowley developed relationships with many of the judges in Jefferson Parish, including Judge Alan Green, a good friend and regular golfing partner of Mr. Bowley’s. Judge Green has since resigned from judicial office and from the practice of law as a result of misconduct which was discovered in the course of “Operation Wrinkled Robe,” an undercover investigation conducted by the FBI and the United States Attorney’s Office into corruption at the Jefferson Parish Courthouse.[2] The federal investigation revealed that BBU inappropriately exerted influence and curried favor with certain judges in |s Jefferson Parish and made improper payments and gifts to the judges and others in exchange for favorable treatment in connection with its bail bonding business.[3]
Count I — The Campaign Contribution Matter
Oh October 22, 2001, Mr. Bowley delivered the sum of $5,000 in cash to Judge Green as a campaign contribution from BBU. This transaction took place in the parking lot of a Gretna country club where Mr. Bowley and Judge Green were playing in a golf tournament. In April 2002, BBU gave a second $5,000 cash campaign contribution to Judge Green, again delivered by Mr. Bowley.
At some point in time, Mr. Marcotte, Mr. Bowley, and respondent had discussed the legality of making a cash campaign contribution to Judge Green. The formal charges allege that the conversation occurred before Mr. Bowley made the first $5,000 cash contribution to Judge Green, and that respondent had assured him the cash payment was both legal and proper, although he knew otherwise. On the other hand, respondent denied that he gave a formal legal opinion to Mr. Marcotte or Mr. Bowley regarding the legality of any specific campaign contribution. Rather, respondent suggests that, during a casual conversation with Mr. Bowley on the way to lunch one day, he responded to a question about the legality of Mr. Marcotte’s giving a cash campaign contribution to a Jefferson Parish judge by commenting that he knew of no law which made such a contribution illegal, although the judge might get in trouble for accepting it. Respondent also contends that this conversation did not occur until the spring of 2002, after Mr. Bowley had already delivered the first contribution to Judge Green.
|4Mr. Bowley subsequently pleaded guilty in the United States District Court for the Eastern District of Louisiana to one count of misprision of felony for his role in this matter. No criminal charges were brought against respondent; however, he was named as an unindicted co-conspirator in the federal government’s case against Mr. Marcotte and Mr. Bow-ley.
The ODC alleges that respondent knowingly gave incorrect legal advice to Mr. Bowley in order to assist BBU and Judge Green in illegal, improper, and/or unethical behavior. The ODC alleges that such conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(f) (knowingly *901 assisting a judge in conduct that is a violation of applicable Rules of Judicial Conduct or other law) of the Rules of Professional Conduct.
Count II — The K-Mart Matter
In connection with respondent’s civil personal injury practice, he undertook the representation of Gloria Lousteau, the plaintiff in a slip and fall case against the K-Mart Corporation. The suit was filed in Jefferson Parish by respondent’s co-counsel and assigned to Judge Green. After a protracted and contentious period of discovery, the case was tried as a bench trial on November 28-30, 2001, several weeks after Judge Green received the first cash contribution at issue in Count I.
At the conclusion of the trial, Judge Green took the slip and fall case under advisement and agreed to receive post-trial memoranda and proposed judgments from the parties. While respondent and defense counsel were preparing their respective post-trial submissions, Mr. Bow-ley golfed with Judge Green. During the outing, Judge Green mentioned to Mr. Bowley that respondent had “tried a good case.” This comment led Mr. Bowley to believe that respondent’s client would win on the merits and that the only question was “how much” would be | ^awarded. Mr. Bowley promptly reported this conversation to respondent, who neither discouraged the flow of information nor reported the inappropriate disclosure to the judge or anyone else.
Approximately two weeks later, respondent and defense counsel submitted post-trial memoranda and proposed judgments. Thereafter, and apparently by mistake, Judge Green signed the proposed judgment which was submitted to him by the attorneys for K-Mart. In so doing, Judge Green dismissed the claims of respondent’s client, Mrs. Lousteau, at her costs.
Respondent was out of town when the judgment was rendered but learned of the dismissal in a telephone conversation with his co-counsel. Upset by this unanticipated result, respondent called Mr. Bow-ley.[4] Respondent told Mr. Bowley about the dismissal ordered by Judge Green, and asked whether Judge Green had said anything suggesting that he (respondent) had offended Judge Green. Respondent also expressed dismay about the situation, stating that he could not believe that if he offended the judge personally “he would take it out on my client.” Respondent asked Mr. Bowley if Judge Green would be receptive to speaking with him (respondent) when he returned to New Orleans. Mr. Bowley told respondent that he expected to see Judge Green shortly and “if it ... allows itself I’ll — I’ll try to find out what happened.” Respondent expressed his appreciation for this offer.
Mr. Bowley did speak with Judge Green about the K-Mart case. Judge Green subsequently vacated his earlier judgment for the defendant and rendered a substantial judgment in favor of respondent’s client, Mrs. Lousteau.[5]
| (¡The ODC alleges that respondent authorized or failed to object to Mr. Bowley’s ex parte communications with Judge Green regarding the K-Mart case, and that such conduct violated Rules 3.5(a) (a lawyer shall not seek to influence a judge by *902 means prohibited by law), 8.5(b) (prohibited ex parte communications), and 8.4(a) of the Rules of Professional Conduct. Respondent initially denied any misconduct but then coneeded that his communications (through Mr. Bowley) with Judge Green during the pendency of the K-Mart case constituted a violation of Rule 3.5(b).

Hearing Committee Report

As previously indicated, the matter numbered 07-DB-033 proceeded to a formal hearing on the merits conducted in May 2009. After reviewing the testimony and evidence presented at the hearing, the hearing committee found the ODC failed to prove any connection between the K-Mart case and the $5,000 contribution BBU made to Judge Green. Specifically, the committee found the ODC failed to clearly establish when the $5,000 contribution was made in relation to the trial of the K-Mart case.[6] The ODC also failed to clearly establish when respondent advised Mr. Marcotte and Mr. Bowley concerning the legality of the contribution, and whether such advice was provided before or after the contribution was made. Nonetheless, respondent did admit that he (through Mr. Bowley) engaged in an ex parte communication with Judge Green while he had a matter pending before the judge, and that such conduct violated Rule 3.5(b) of the |7RuIes of Professional Conduct. The committee found that this improper communication created a strong potential for prejudice and impropriety, and respondent should have known his conduct was wrong. Respondent also admitted that his legal advice concerning the campaign contribution was not correct, though the committee found no evidence he knowingly gave the incorrect advice in order to assist in illegal, improper, and/or unethical behavior. Rather, the committee acknowledged the testimony of respondent and another witness that respondent seemed to really believe his informal advice was correct when he gave it. Based on these findings, the committee found no violation of Rules 8.4(a), 8.4(d), or 8.4(f) as charged in Count I.
In mitigation, the committee noted that respondent seemed genuinely remorseful for his misconduct. He also has no record of prior discipline.
Considering these factual findings, and in light of prior cases dealing with similar misconduct, the committee concluded that the appropriate sanction in this matter is a one-year suspension, with all but three months deferred.
The ODC filed an objection to the hearing committee’s factual findings and legal conclusions. The ODC also objected to the leniency of the sanction recommended by the committee. In his brief filed with the disciplinary board, respondent asserted that the sanction recommended by the committee is too harsh.

09-DB-050

Mrs. Octavia Brown, a widow, died in the fall of 2004, survived by her four children. One of Mrs. Brown’s sons was appointed the administrator of the succession. In April 2005, the administrator discharged George Perez, Jr., the attorney for the succession, and in June 2005, *903 the administrator retained respondent to handle the matter. Mrs. Brown’s succession was rather simple and included cash in a bank account, three pieces of real estate (only two of which were 18mortgaged), and an automobile and household furnishings. There was little debt owed other than the mortgages. Nevertheless, respondent was unable to process the succession proceedings to a judgment of possession prior to the landfall of Hurricane Katrina on August 29, 2005, in part because of the inability of the heirs to agree as to key issues associated with the succession. While there were understandable delays after Katrina, by 2006 respondent still had not yet filed a tableau of distribution reflecting all of the assets and debts of the estate as well as the various claims of the heirs for credits and/or offsets alleged to have been necessary as a result of the improper use of estate funds by one or more heirs.
As a result of these delays, five motions to compel were filed in the succession proceedings in an effort to get respondent to file an amended detailed descriptive list, to file a tableau of distribution, or to publish a tableau of distribution. At various times, the district court ordered respondent to file a detailed descriptive list or amended tableau of distribution by a deadline which respondent failed to honor. In December 2006, respondent was held in contempt of the court’s orders and sanctioned the sum of $1,000 payable to counsel for the mover, plus costs. Respondent did not pay the sanction until September 2008, nearly two years after he was held in contempt and nine months after a complaint was filed against him with the ODC. In April 2009, respondent finally obtained a judgment of possession in the succession of Mrs. Brown.
The ODC alleges that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in the representation of a client), 8.4(c) (knowing disobedience of an obligation under the rules of a tribunal), and 8.4(a) of the Rules of Professional Conduct.

U10-DB-090

Brandon Pitre, an unmarried man with no children, died in December 2001, survived by his mother, Pamela Pitre, and two siblings. In February 2002, Ms. Pitre retained respondent to handle her son’s succession as well as an insurance claim for water damage to his home. Respondent resolved the insurance claim in April 2005; however, he failed to promptly secure a judgment of possession in the succession matter. He also failed to communicate with Ms. Pitre on a timely basis and failed to provide her with sufficient information to participate intelligently in decisions concerning the objectives of the representation.
In August 2009, Ms. Pitre filed a complaint against respondent with the ODC. In September 2010, more than eight years after he was retained in the matter, respondent finally obtained a judgment of possession in the succession of Brandon Pitre.
The ODC alleges that respondent’s conduct violated Rules 1.3, 1.4 (failure to communicate with a client), and 8.4(a) of the Rules of Professional Conduct.

Hearing Committee Report

As previously indicated, the formal charges in 09-DB-050 and 10-DB-090 were consolidated for a hearing conducted in April 2012. After reviewing the testimony and evidence presented at the hearing, the hearing committee found that in 09-DB-050, respondent attempted to convene a meeting shortly after he was retained in order to discuss the amicable resolution of Mrs. Brown’s succession with all of the interested parties. This attempt *904 was rebuked by Mr. Perez (who had been discharged by the administrator as the attorney for the estate but thereafter was engaged by other heirs), although Mr. Perez complained that the problems with resolving the succession were the actions of the administrator.[7] A conference | inbetween counsel was ultimately held on August 17, 2005, during which a plan was formulated to resolve the remaining issues in the case. Unfortunately, Hurricane Katrina intervened, causing nearly all legal activities to be interrupted for several months. Thereafter, Mr. Perez filed a motion to remove the administrator. This motion could not be heard as service on the administrator (who had relocated to Texas after Katrina) could not be made. Eventually, respondent was served as counsel for the succession representative and he was ordered to file a tableau of distribution on behalf of the succession. Respondent was not able to obtain the appropriate information to prepare the tableau, however, as one of the heirs was incarcerated and the administrator was located out of state. During the spring and summer of 2006, respondent did file insurance claims on behalf of the succession, preserving its right to recover for hurricane and flood damage to two pieces of immovable property owned by Mrs. Brown. Respondent was ordered by the court (in his absence on the date of the motion hearing) to file a tableau by September 29, 2006. That date was extended to November 21, 2006 by an order signed on November 29, 2006.
Respondent filed a preliminary tableau of distribution on November 29, 2006, nine days late. Mr. Perez then filed an additional rule for contempt on November 30, 2006, setting a hearing for December 15, 2006. There was no return for service of the rule on respondent. Nonetheless, a contempt hearing was held on December 15, 2006 and in respondent’s absence the court found him in contempt. The court ordered respondent to pay Mr. Perez an attorney’s fee of $1,000 and reset the matter for hearing on January 18, 2007. Respondent paid Mr. Perez’s fee and costs on September 5, 2008.
Counsel for two of the heirs traversed the preliminary tableau of distribution and further hearings were held, ultimately resulting in court-ordered informal meetings between counsel to work out the competing claims. These meetings were |nnot successful and after the administrator was removed, respondent filed a motion to appoint a replacement administrator. The court appointed attorney Katherine Guste as the replacement administratrix. Ms. Guste filed an amended and supplemental tableau of distribution on January 30, 2009. A hearing on the matter was finally held before the court on April 1, 2009, at which time a judgment of possession was entered and the matter was closed.
In 10-DB-090, the committee found that Brandon Pitre’s succession appeared to be relatively uncomplicated, consisting of one piece of immovable property, a vehicle, deposit accounts, and several debts. However, after the succession was opened, conflicts arose between Ms. Pitre and her daughter, and Ms. Pitre was uncertain what she wished to do with the succession assets. Respondent was also called upon by Ms. Pitre to handle other matters during this time.
The succession was not concluded before Hurricane Katrina. Ms. Pitre relocated to Tennessee and a considerable period of time passed before she and respondent reestablished communications. On September 5, 2008, respondent addressed correspondence to Ms. Pitre requesting addi *905 tional information as necessary to conclude the succession. Ms. Pitre replied, but she did not provide the requested information. A judgment of possession was granted on September 27, 2009, closing the succession. On October 28, 2009, Ms. Pitre requested her file from respondent, which he provided on November 1, 2009.[8]
Based on these factual findings, the committee determined that respondent neglected Mrs. Brown’s succession, in violation of Rule 1.3 of the Rules of Professional Conduct, and violated Rules 1.3 and 1.4 in his handling of Brandon |l2Pitre’s succession. The committee did not find any violation of Rules 3.4(c) or 8.4(a) in the Brown matter.
The committee determined that the applicable baseline sanction in this matter is suspension. As aggravating factors, the committee recognized the following: vulnerability of the victims and multiple offenses. In mitigation, the committee found the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and remorse.
Turning to the issue of an appropriate sanction, the committee cited In re: Regan, 04-1365 (La.10/15/04), 885 So.2d 514. In Regan, the attorney neglected his client’s legal matter, resulting in the abandonment of the case. Considering the aggravating and mitigating factors present, as well as the fact that the misconduct stemmed primarily from poor law office management, the court imposed a fully deferred six-month suspension with probation. The committee concluded:
Here as in Regan, attorney neglect was one of the causes of the misconduct. There is an absence of a dishonest or selfish motive, and also a number of mitigating factors. Respondent cooperated fully with ODC. Respondent also had several practice problems during the time of misconduct, including the lengthy delays caused by Hurricane Katrina. Respondent’s mishandling of the matters stemmed in large part [from] poor practice management. Although some factual differences between Regan and the present matter exist, the Committee is of the view that Regan supports the committee’s recommendation.
Accordingly, the committee recommended that respondent be suspended from the practice of law for six months, fully deferred.
The ODC filed an objection to the hearing committee’s factual findings and legal conclusions. The ODC also objected to the leniency of the sanction recommended by the committee.
| v?fl7-DB-033, 09-DB-050 & 10-DB-090

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board determined that the factual findings made by the hearing committees are not manifestly erroneous, with one exception relating to 07-DB-033 (see note 6, supra). Based on these facts, the board made the following determinations concerning respondent’s misconduct:
07-DB-033: Respondent did not violate the Rules of Professional Conduct as charged in Count I. The testimony in the record does not lead to the conclusion that respondent knowingly gave improper legal advice regarding campaign contributions in order to gain an advantage in the K-Mart case he was litigating in Judge Green’s courtroom. Respondent admits *906 that he now knows his legal advice was incorrect, but the testimony indicates that at the time of his conversation with Mr. Bowley and Mr. Marcotte, respondent believed he was delivering sound, albeit “off the cuff,” advice.
In Count II, the board found respondent violated Rules 3.5(b) and 8.4(a) by communicating through another individual with the judge presiding over the trial of a case being litigated by respondent. Specifically, respondent admits that he did not discourage the ex parte communication between Mr. Bowley and Judge Green with regard to the K-Mart case which was under Judge Green’s consideration. However, the board found respondent did not violate Rule 3.5(a), which prohibits a lawyer from seeking to influence a judge by means prohibited by law, because there is conflicting testimony in the record as to when respondent provided the campaign contribution advice to Mr. Bowley. Without knowing this fact, it is impossible to determine whether respondent was seeking to influence Judge Green to garner a benefit in the K-Mart case.
| u09-DB-050: The board found respondent violated Rules 3.4(c) and 8.4(a) by failing to comply with court-ordered deadlines to file a tableau of distribution in the succession of Mrs. Octavia Brown. He also failed to appear for a court-ordered contempt hearing. However, the board found respondent did not neglect the succession matter because “there was a confluence of events and people that complicated the succession and elongated the process.” Therefore, the board concluded that respondent did not violate Rule 1.3.
10-DB-090: The board found respondent violated Rules 1.3, 1.4, and 8.4(a) in his handling of the succession of Brandon Pitre. Respondent failed to finalize the succession in a timely manner and failed to provide Mrs. Pitre with information regarding his progress in resolving her son’s succession.
The board determined that respondent violated duties owed to Mrs. Pitre (10-DB-090) and to the profession (Count II of 07-DB-033 and 09-DB-050). Respondent’s conduct, as it relates to the succession matters, appears to be negligent. His involvement in ex parte communications, considering his tenure as a lawyer, was knowing. Actual harm to the reputation of the profession has occurred, as any time a lawyer participates in and/or condones communications with a presiding judge, it causes harm and mistrust among fellow members of the legal profession and the public. The baseline sanction for respondent’s misconduct is suspension.
As aggravating factors, the board found the following: multiple offenses, vulnerability of the victims, and substantial experience in the practice of law (admitted 1986). In mitigation, the board found the following factors: absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions (in 09-DB-050), and remorse.
| ^Considering the prior jurisprudence dealing with misconduct similar to respondent’s, the board recommended that respondent be suspended from the practice of law for one year, with all but three months deferred. The board also recommended that respondent be assessed with all costs of this disciplinary proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this *907 court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
The record of this matter supports the factual findings made by the hearing committees, as modified by the disciplinary board. Essentially, respondent engaged in improper ex parte communications with Judge Green, failed to comply with a court order, neglected a succession matter, and failed to communicate with a client. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987).
11,;We agree that respondent violated duties owed to his client and to the profession, causing actual harm. His misconduct in the succession matters was negligent, but he acted knowingly in communicating with a judge in an ex parte manner. The applicable baseline sanction in this matter is suspension.
The record supports the aggravating and mitigating factors found by the board. These include the following aggravating factors: multiple offenses, vulnerability of the victims, and substantial experience in the practice of law. The mitigating circumstances include the absence of a prior disciplinary record, absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, imposition of other penalties or sanctions, and remorse.
Considering the numerous mitigating factors present, we agree that the sanction recommended by the board is reasonable. Accordingly, we will adopt the board’s recommendation and suspend respondent from the practice of law for one year, with all but three months deferred.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Kenneth J. Beck, Louisiana Bar Roll number 17462, be and he hereby is suspended from the practice of law for one year, with all but three months deferred. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
GUIDRY, J., recused.

 Guidry, J. recused.

. The formal charges also suggest that another attorney, John Sudderth, had an office in one of Mr. Marcotte's buildings; however, Mr. Sudderth has denied ever maintaining such an office. This factual reference adds nothing to the substantive allegations of misconduct alleged by the ODC against respondent, and therefore we have made no further reference to it.

. Judge Green resigned from the bench in August 2005, following his conviction of mail fraud. He then resigned from the practice of law in lieu of discipline. In re: Green, 06-0141 (La.2/8/06), 920 So.2d 861.

. In 2003, BBU was ordered to cease and desist from all activity in the business of insurance. In March 2004, Mr. Marcotte pleaded guilty to RICO charges and was sentenced to serve 38 months in prison.

. This telephone conversation was intercepted and recorded by the FBI.

. The judgment rendered by Judge Green totaled $802,843.89, including $725,000 in general damages. On appeal, the court of appeal found the general damage award was excessive and reduced it to $475,000, bringing the total judgment to $552,843.89. Lousteau v. K-Mart Corp., 03-1182 (La.App. 5th Cir.3/30/04), 871 So.2d 618, writ denied, 04-1027 (La.6/25/04), 876 So.2d 835.

. The disciplinary board subsequently determined that this factual finding is manifestly erroneous, and that the ODC clearly established the following timeline of events:
October 22, 2001 — Norman Bowley makes a $5,000 cash payment to Judge Green on behalf of Bail Bonds Unlimited.
November 28-30, 2011 — The K-Mart case is tried before Judge Green.
April 2002 — Norman Bowley makes a second $5,000 cash payment to Judge Green on behalf of Bail Bonds Unlimited.

. The committee did not find credible the testimony given by Mr. Perez at the hearing.

. The committee found Ms. Pitre’s testimony to be "confusing, although she did express her concerns with a lack of communication” by respondent.